MICHIGAN NATIONAL BANK *v.* AMERICAN EXPRESS CO.

1. BILLS AND NOTES—BANK DRAFT—STOPPAGE OF PAYMENT—HOLDER IN DUE COURSE—CONSIDERATION.

Payee of bank draft, given to its collector in settlement of accounts by its subagent and paid for from funds he had obtained by forgery, suffered no detriment because of notice of infirmity and stoppage of payment thereof before its receipt by either the branch or home office of payee, where collector gave subagent only a provisional receipt while final checkup as to settlement of account in home office was made, hence payee was not a holder in due course for it had not given anything of value as consideration (2 Comp. Laws 1929, §§ 9301, 9308).

2. TRUSTS—TRACING—IDENTITY.

The true owner of a trust fund, traced to the possession of another, has the right to have it restored, not as a debt due and owing, but because it is his property wrongfully withheld from him, and it makes no difference whether the fund be traced into a bank account or elsewhere if essential facts can be shown establishing identification of the fund and no superior rights of innocent third parties have intervened.

3. SAME—EQUITY—TRACING—IDENTITY.

Equity will follow trust money through any number of transmutations and restore it to the owner so long as it can be identified in its original or substituted form.

4. SAME—TRACING—NEGOTIABLE INSTRUMENTS.

Where money impressed with a trust is converted by the wrongdoer into a negotiable instrument, such instrument will be impressed with the trust in the hands of such wrongdoer or his assignee unless the assignee is a *bona fide* holder in due course.

Appeal from Ingham; Carr (Leland W.), J. Submitted October 12, 1943. (Docket No. 8, Calendar No. 42,387.) Decided November 29, 1943.

Following trust property into its product, see 1 Restatement, Trusts, § 202.

Bill by Michigan National Bank against American Express Company, a New York corporation, Michigan Liquor Control Commission, and another to determine the rights of the defendants in certain money on deposit. From decree entered, American Express Company appeals and plaintiff cross-appeals. Affirmed.

*Shields, Ballard, Jennings & Taber* (*Donald G. Fox*, of counsel), for plaintiff.

*Angell, Turner, Dyer & Meek*, for American Express Company.

*Herbert J. Rushton*, Attorney General, *Edmund E. Shepherd*, Solicitor General, *Theron W. Atwood* and *Daniel J. O'Hara*, Assistants Attorney General, for Michigan Liquor Control Commission.

CHANDLER, J. The record in this case discloses no disputed questions of fact. They are so understandingly and concisely stated by the trial judge in his opinion that we quote therefrom:

"This proceeding has been instituted by a bill of interpleader to determine which of the defendants is entitled to a fund that the plaintiff now has in its possession. The material facts are not in dispute. In 1939 the liquor control commission employed as its chief cashier the defendant Dobrowski. In the latter part of the same year Dobrowski sought and obtained from the American Express Company authority to act as its agent in the writing of money orders. This arrangement was effected primarily for the accommodation of parties applying to the commission for licenses, it being considered expedient that money orders should be attached to papers filed, in lieu of currency.

"On the 12th of September, 1941, or approximately that date, Anheuser-Busch, Inc., of St. Louis, Missouri, forwarded to the commission a certified check in the sum of $8,518 for stamps that it requested to be sent to it. Said check was duly received at the office of the commission and subsequently came into the possession of Dobrowski. Under date of October 2, 1941, Dobrowski opened an account in the plaintiff bank, under the designation, 'Michigan Liquor Control Comm. American Express Fund,' making a deposit at that time in the sum of $60.90. Prior to such act Dobrowski presented to plaintiff a letter, ostensibly signed by the secretary of the commission, ostensibly authorizing the account, and further providing for withdrawals on the signature of Dobrowski and the stamp of the liquor control commission. Said letter contained the further statement that all withdrawal checks would be made payable either to the express company or to the commission. It is conceded that this letter was a forgery, and that in fact Dobrowski had no authority whatever from the commission to open the account. A further claim is made in this regard that under the statute the commission itself had no such power or authority as Dobrowski attempted to exercise. However, the plaintiff relied on the letter referred to, and on the 3d of October the Anheuser-Busch check was deposited in the account. This was followed on October 6th by a further deposit in the sum of $187.74.

"Following the opening of the account referred to, and on the 6th of October, a collector representing the express company came to Lansing on a periodic visit to effect a settlement with Dobrowski for the period immediately preceding that date. For the purpose of paying the express company the amount of his indebtedness to it, Dobrowski wrote a check on the account in the plaintiff bank in the sum of $8,569.61, payable to plaintiff. He obtained therefor a bank draft in the same amount,

designating the express company as payee. This draft was given to Dobrowski, who in turn gave it to the collector. On the following day the draft was forwarded to the Detroit office of the express company, being received in the usual course of business on the following day.

"The testimony taken on the trial indicates that on the 7th of October the director of finance of the commission was given certain information by officials of another bank in Lansing, which information suggested the expediency of checking Dobrowski's activities. This was done and as a result payment on the draft to the express company was stopped. An attempt was also made to stop payment on the Anheuser-Busch check, but the testimony indicates that this was impossible because said check was certified. Plaintiff also wired the New York office of the express company, advising it that payment on the draft was being stopped. It appears further that during the evening of October 7th the collector who took the draft from Dobrowski was advised by telephone that there was something wrong with Dobrowski's accounts. This information was transmitted to the Detroit office of the defendant express company. Subsequently, and apparently at the instigation of the commission, a criminal prosecution was instituted against Dobrowski, the status of which at the present time is not disclosed by the record. The commission also forwarded to the Anheuser-Busch Company stamps in the amount of the remittance made by it. The commission also made demand on the bank for the amount of the certified check, which demand was refused because of the conflicting claim of the express company.

"The principal question at issue in the case arises from the contention of the express company that it is a *bona fide* holder in due course of the draft and is in consequence entitled to have the amount thereof paid to it by the plaintiff. It is insisted that it took the instrument in the ordinary course of

business without notice of any defect, that it paid
value in that the obligation of Dobrowski to it was
cancelled, and that the settlement made by its col-
lector with Dobrowski was in legal effect a final set-
tlement.   Under the holdings in *Price* v. *Klett,* 255
Mich. 354, and other decisions of like import, the
law must be regarded as settled in this State that
under certain circumstances the payee of a negotia-
ble instrument is entitled to all the rights of a *bona
fide* holder in due course.   The question therefore
is, in substance, whether the proofs justify and re-
quire the conclusion here that the defendant express
company is within the scope of the rule.

"It is the position of the plaintiff and of the de-
fendant commission that the so-called settlement
between the express company's collector and Do-
browski was not final in any proper sense of the
term.   Stress is placed on the fact, as disclosed by
the record, that accounts of this character are
checked in the New York office of the express com-
pany and errors found to exist are corrected.   It is
insisted, therefore, that final and definite action
comes only with the approval of the New York of-
fice and that any arrangement made between the
collector and a local agent is merely tentative.   As
a matter of fact the testimony of the express com-
pany's principal witness indicates that such is the
case.   It seems to me that the burden of establish-
ing its character as a *bona fide* holder rests on the
defendant express company.   Such conclusion would
seem to follow from the provisions of section 61 of
the negotiable instruments law (2 Comp. Laws 1929,
§ 9308 [Stat. Ann. § 19.101]).   A consideration of
the record as made brings me to the conclusion that
such burden of proof has not been sustained.   There
is no showing that the New York office of the ex-
press company gave any credit whatever to Dobrow-
ski on account of the draft.

"As pointed out by counsel in their briefs, it is
the purpose of the statute to protect a *bona fide*

holder of a negotiable instrument who properly establishes his character as such. Unquestionably the purpose of the provisions of the law relating to this matter were designed to facilitate the use of negotiable instruments in the transaction of business. In consequence, one who takes such an instrument for value before maturity without notice that it has been dishonored, if such is the case, without knowledge of facts fairly disclosing the existence of infirmity in the instrument, may acquire a better title than was possessed by the party negotiating such instrument. It seems to me, however, that in any case where the reason for the rule that protects the *bona fide* holder does not exist that the rule itself should not apply. In the case at bar it is obvious that Dobrowski created the account in the plaintiff bank on the basis of a forged letter, and that he deposited the Anheuser-Busch check therein for the purpose of enabling him to pay the express company the money that he owed it. That his conduct was unauthorized, fraudulent, and illegal is scarcely open to question insofar as the proofs in this case are concerned. We have then a situation in which an illegal act, amounting to a violation of the criminal law of the State, is done deliberately by an agent for the purpose of benefiting his principal. The draft was procured and turned over to the collector in order to carry out this purpose. In the ultimate analysis it seems to me that the defendant express company is undertaking here to obtain the benefit of the illegal course of conduct in which its agent indulged in order to give it such benefit. An unusual situation is presented and one that in my opinion is not within the purview of the provisions of the negotiable instruments law protecting a *bona fide* holder in due course. In this connection attention has been called by counsel to the case of *State Savings Bank of Ionia* v. *Montgomery,* 126 Mich. 327. The facts there involved, however, were such as to distinguish that case from the situation here

involved.    The    defendant    Montgomery    executed
accommodation paper for the benefit of his friend,
the cashier of the plaintiff bank.    Apparently cer-
tain misrepresentations were made by the cashier,
but the opinion of the Supreme Court does not indi-
cate that criminal conduct was deliberately engaged
in by such agent in order to benefit his principal.
Every controversy of this character must turn on
its own peculiar facts.    It may be noted also, in
passing, that when the controversy arose in the
Ionia county case the cashier referred to was insol-
vent.    In the case at bar, however, there is nothing
to indicate that Dobrowski is not financially respon-
sible, and hence the element of possible prejudice
to the express company is not present.

"This brings us to a consideration of the claim
of the liquor control commission.    In opposition to
that claim it is argued that the commission ratified
the acts of Dobrowski and became bound by all of
his acts with reference thereto.    Attention is called
to the demand made on the plaintiff bank for the
fund represented by the Anheuser-Busch check, and
to the fact that the criminal prosecution was insti-
tuted against Dobrowski on a charge of embezzling
funds of the commission.    It seems to me, however,
that the demand referred to was more in the nature
of a repudiation of Dobrowski's acts than an at-
tempted ratification of his criminal conduct.    It was
quite obviously the belief of the commission that
having    received    the    certified    check    from    the
Anheuser-Busch company for the purpose before
referred to, it became the owner of such check and
that in consequence when Dobrowski took it from
the commission office and used it for the purpose
stated he was fraudulently converting to his use, or
to the use of another, the property of the commis-
sion.    Acting on this theory, the stamps were sent
to the Anheuser-Busch company.    As I view the
situation, these various acts on the part of the com-
mission were not in the nature of a ratification of

Dobrowski's acts with reference to the check after the commission received it, but rather in recognition of the situation, including the obligation created by the receipt of the check. The record made on the trial indicates clearly that the bank received and now has the property of the commission, unlawfully taken from it by Dobrowski. The acts to which attention has been called were not done for the purpose of reaping any advantage from Dobrowski's conduct, but, properly construed, evidenced an attempt to recover the converted fund.

"There is much force in the contention that under the statute the commission did not have the power to authorize, or itself make, any such deposit as is here in question. As I view the situation, however, it is unnecessary to pass specifically on this point. Dobrowski has not appeared in the case and it is a fair inference that he is not asserting any claim to that portion of the fund represented by the Anheuser-Busch check. So far as the other two deposits are concerned, there is nothing here to indicate the source from which they came, and it must be assumed in consequence that Dobrowski deposited his own funds in the total amount of $239.35. The draft now in the hands of the defendant express company is good in that amount, the assumption being, of course, that the money attempted to be disbursed by Dobrowski from the account included such sum as he had the legal right to control. The decree will therefore provide, in accordance with the conclusions above indicated, that of the moneys in the fund in plaintiff's possession the sum of $8,518 shall be paid to the defendant commission and the balance of $239.35 to the defendant express company."

From a decree entered in accordance with the foregoing findings and conclusions, defendant American Express Company appeals.

Plaintiff filed a cross appeal, contending that if appellant express company prevails in its appeal

to this court, we should determine that defendant
liquor control commission has impliedly or ex-
pressly ratified the acts of Dobrowski and is now
estopped from claiming the fund to the exclusion
of plaintiff bank.

We are of the opinion that the sole question at
issue in this appeal arises from the contention of
appellant that it is a *bona fide* holder in due course
of the draft involved and as such entitled to have
it paid to it by plaintiff.  The express company in-
sists that it took the instrument in the ordinary
course of business without notice of any defect;
that it paid value in that the obligation of Dobrow-
ski to it was cancelled, and that the settlement made
by its collector with him was in legal effect a final
settlement.

If the facts as disclosed by the record warrant
such an inference then there is much force to the
contention of appellant.  However, the inference
that we get from a review of the record is quite to
the contrary.  The testimony of the express com-
pany's principal witness, its assistant district man-
ager, was to the effect that final settlements of
agents' accounts were effective only after a check
and approval at the main office of the company in
New York City.  The witness said with reference
to the receipt given by the collector to the agent:

"It is a provisional receipt that is given, subject
to being corrected in case the instruments that the
subagent turns over to the collector are no good, or
in case the money order which the subagent has
issued does not correspond with the stub.  It is a
provisional receipt."

It seems quite clear to us that final settlement
comes only with the approval of the New York of-
fice and that any settlement between the collector
and the agent is merely tentative.

In this instance, the draft was forwarded to the Detroit office of the company by the collector on October 7th, where it arrived in the afternoon of October 8th. The Detroit office had notice of the defect in the draft on the evening of the 7th and the New York office had notice by two telegrams from plaintiff bank on the 8th of the defect in the draft and that payment on the same had been stopped.

Under the circumstances, we fail to find where the express company gave anything of value as consideration for the draft in question.* True, its agent Dobrowski received from its collector a receipt for the amount of said draft, but it is conceded that the receipt was only a provisional one and had no binding force or effect until the New York office had checked his account and the amount found to be correct. The account was "subject to being corrected in case the instruments that the subagent turns over to the collector are no good, or in case the money order which the subagent has issued does not correspond with the stub." In view of the facts, we reach the conclusion that the express company parted with nothing of value in exchange for the draft. It extended no credit to its agent by reason of its receipt. It loses nothing that it is entitled to because of stoppage of payment. It suffered no detriment, nor forebore the exercise of any right in reliance upon the draft. Some of these elements are necessary incidents, under the peculiar facts of this case at least, to make appellant a holder in due course and entitle it to enforce payment. See *Drovers' National Bank* v. *Blue,* 110 Mich. 31 (64 Am. St. Rep. 327); *Central Savings Bank & Trust Co.* v. *Stotter,* 207 Mich. 329.

"The peculiar facts" above referred to are the following: Dobrowski was the agent of both of his codefendants, the express company and the liquor

---

* See 2 Comp. Laws 1929, § 9301 (Stat. Ann. § 19.94).—Reporter.

control commission. Some time prior to October 3, 1941, a certified check from Anheuser-Busch, Inc., of St. Louis for the sum of $8,518 payable to the liquor control commission for stamps came into Dobrowski's possession and which by means of a forged instrument he deposited with plaintiff bank in an account designated as "Michigan Liquor Control Commission American Express Fund." The forged letter stated: "checks for withdrawals will be made over the signature of Louis Dobrowski, head cashier, and also stamped 'Michigan Liquor Control.' These checks for withdrawals will be made payable to the American Express Company or the Michigan Liquor Control ONLY. (Signed) PHILLIP J. NEUDECK, Secretary."

This deposit was made on October 3, 1941.

It appears from the record that just prior to this last-mentioned date Dobrowski had attempted to deposit the Anheuser-Busch check in his own name with another Lansing bank. He thus clearly indicated his intent to steal the proceeds of this check to cover his defalcation with his principal, American Express Company, because on October 6th he did take the proceeds of this check which was truly a trust fund, the property of his principal, the liquor control commission, and procured the draft in question which was turned over to the collector of his other principal to cover his defalcation from it.

While this draft was either in the possession of the express company's collector or in transit by mail from him to the Detroit office of the company, the Detroit branch received notice by telephone from its collector, and the principal office in New York received notice by telegram from plaintiff bank of the infirmity in the draft.

Can it be said, under these circumstances, that the express company received the draft in due course and accepted it in final settlement of its

account with Dobrowski without notice or knowledge of any infirmity in it? Our answer must be in the negative.

Conclusively, it is established that the money represented by the draft in question is in fact a trust fund. The rule of law applicable to such funds is well stated in 26 R. C. L. p. 1351, as follows:

"As has been seen, the true owner of a trust fund traced to the possession of another has the right to have it restored, not as a debt due and owing, but because it is his property wrongfully withheld from him; and it makes no difference whether the fund be traced into a bank account, the possession of an individual, or into the hands of a firm composed of many individuals, if the essential facts are shown by which the identification of the fund can be established, and no superior rights of innocent third parties have intervened."

In 26 R. C. L. p. 1348, it is said:

"No right is more fully recognized than the right of a *cestui que trust* to pursue and recover trust funds wrongfully diverted, provided their identity has not been lost and they have not passed into the hands of a *bona fide* purchaser for a valuable consideration without notice. Whenever property in its original state and form has once been impressed with the character of a trust, no subsequent change of such state and form can divest it of its trust character, so long as it is capable of clear identification; and the beneficiary of the trust may pursue and reclaim it in whatever form he may find it, unless it has passed into the possession of a *bona fide* purchaser without notice."

In the instant case, no difficulty exists in tracing these trust funds, the property of the commission, into the draft, recovery on which is sought by the express company.

A review of the case of *Pollack* v. *Leonard & Braniff,* 112 Okla. 276 (241 Pac. 158), reveals a situation quite similar to the one in the instant case. It was there held that equity will follow trust moneys through any number of transmutations and restore it to the owner so long as it can be identified in its original or substituted form and that where money impressed with a trust is converted by the wrongdoer into a negotiable instrument, such instrument will be impressed with the trust in the hands of the wrongdoer or his assignee unless such assignee is a holder in due course. The court on this branch of the case said:

"The transmutation of the original $6,000 check into a cashier's check, and the cashier's check into the form of a New York draft, in no way alters the situation.

"So long as the trust property can be traced and followed into other property into which it has been converted, that remains subject to the trust. The product or substitute has the nature of the original imparted to it. The depositing of trust money in a bank, although it creates the relation of debtor and creditor between the bank and the depositor, does not change its character or relieve the deposit from the trust. It is not the identity of the form, but the substantial identity of the fund itself, which is the important thing."

In the instant case, the *cestui que trust* had no knowledge or notice of the theft of its funds by its trustee and agent Dobrowski, and indisputably the knowledge of its agent was not imputable to it, under the circumstances here disclosed. Can this be said to be true as to Dobrowski's other principal, the express company? Definitely not. Before the draft was received by anyone on behalf of the company authorized to accept it in settlement of

Dobrowski's accounts with it, it had notice of an infirmity in the instrument, and later that the infirmity in the draft consisted of the fact that it had been acquired by its agent with trust funds belonging to the liquor control commission.

A careful review of the authorities cited by counsel for the express company does not indicate to us that any of them are determinative of the question involved. All reveal a different state of facts than are presented here.

In our opinion, the trial court reached the correct conclusion, and the decree is affirmed, with costs to appellees.

NORTH, STARR, BUSHNELL, and SHARPE, JJ., concurred with CHANDLER, J. BOYLES, C. J., and WIEST and BUTZEL, JJ., concurred in the result.