In re Cynthia MAYER, Debtor.

No. 10–15170.

United States District Court, E.D. Michigan, Southern Division.

June 24, 2011.

preferential transfers—that had previously been granted in favor of the above-named Creditors. *See* Opinion Granting Defs.' Mot. for Summ. J., No. 09–60538, (Bankr. E.D.Mich. Dec. 16, 2010), Bankr.Docket No. 30 ("Bankruptcy Opinion").

## I.

On February 19, 2008, Mayer filed for a divorce from her now-former husband in the Oakland County Circuit Court of Michigan ("Oakland Circuit"). In those proceedings, she was represented by Gilbert Gugni of Giarmaco, Mullins and Horton, P.C. After nearly a year of litigation, the parties agreed to arbitrate their claims before Arnold Garber, who had been chosen by them to serve as the arbitrator in their dispute. Thereafter, Garber issued a binding arbitration report and award that was subsequently used by the Oakland Circuit in rendering its judgment of divorce on June 4, 2009. Among the provisions within this judgment was a requirement that Mayer pay the Creditors' costs and fees, with the funds to come from the liquidation of a portion of her individual retirement account ("IRA"). The relevant provisions of the judgment contained the following language:

76. IT IS FURTHER ORDERED AND ADJUDICATED that [Mayer] shall forthwith liquidate and turn over Fifty Thousand ($50,000.00) Dollars of her H & R Block IRA accounts . . . to her attorney Gilbert Gugni, who shall disburse the funds as follows:

A. The balance, if any, of fees owed by [Mayer] to Arbitrator Arnold Garber, which shall be first paid.

B. The balance, if any, of fees owed by [Mayer] to her attorney, Giarmaco, Mullins & Horton, P.C., shall then be paid.

*ORDER*

JULIAN ABELE COOK, JR., District Judge.

This case relates to an appeal by Cynthia Mayer who contends that the Bankruptcy Court for the Eastern District of Michigan granted a legally incorrect decision in the form of a summary judgment in favor of Gilbert Gugni, Arnold Garber, and the law firm of Giarmaco, Mullins & Horton, P.C. (collectively, "Creditors"). The underlying action arose out of an adversary proceeding by Mayer who had unsuccessfully sought to avoid certain liens—as

C. The estimated funds necessary to pay any tax liabilities shall then be paid.

D. The balance of the funds, if any, shall be paid to [Mayer].

96. IT IS FURTHER ORDERED AND ADJUDICATED that each party shall pay the balance of his/her respective attorney fees forthwith and each attorney shall retain a lien on his client's share of the marital assets to insure payment of his fee.

97. IT IS FURTHER ORDERED AND ADJUDICATED that the parties shall each pay the balance of the fees that he/she owed to Arbitrator Arnold Garber. The Arbitrator shall retain a lien on each party's share of the marital assets to insure payment of his fees.

(J. of Divorce, Copy at Compl., Ex. C, Bankr.Docket No. 1–3).

Twenty-six days after the judgment of divorce was entered, Mayer filed a petition for relief under Chapter 7 of the Bankruptcy Code. Thereafter, she initiated an adversary proceeding against the Creditors in which she sought to avoid, as preferential transfers, the liens in paragraphs 96 and 97 of the judgment. The Creditors filed a counter-claim in which they argued that, by virtue of paragraph 76, the IRA assets and their proceeds were impressed with a constructive trust, and therefore were not subject to Mayer's preference efforts. When the parties were unable to resolve their differences amicably, they filed cross motions for summary judgment, which were ultimately resolved by the Bankruptcy Court in favor of the Creditors. In relevant part, the Bankruptcy Court opined as follows:

[T]here is no genuine issue of material fact that (1) the award described in paragraph 76 in the Divorce Judgment is, or [is] sufficiently tantamount to, a pre-petition judicial decision impressing a constructive trust upon $50,000 worth of proceeds from [Mayer's] IRA for the benefit of Creditors and (2) there is no need under Michigan law for the judgment of divorce to use the words "constructive trust" in order for there to be a trust. Therefore, those proceeds cannot be the subject of an avoidance action under § 547(b).

(Bankr.Op. at 10–11, Bankr.Docket No. 30). This appeal by Mayer followed.

## II.

A federal district court has jurisdiction to hear appeals—and an aggrieved litigant may appeal as of right—from "final judgments, orders, and decrees" of a bankruptcy court. 28 U.S.C. § 158(a)(1). A bankruptcy court order in which a summary judgment is granted is a final appealable order. *Drown v. Nat'l City Bank (In re Ingersoll)*, 420 B.R. 414, 414–15 (6th Cir. BAP 2009). On appeal, this Court possesses the authority to review a bankruptcy court's findings of fact for clear error and its conclusions of law de novo. *Made in Detroit, Inc. v. Official Cmte. of Unsecured Creditors of Made in Detroit, Inc. (In re Made in Detroit, Inc.)*, 414 F.3d 576, 580 (6th Cir.2005); *see also* Fed. R. Bankr.P. 8013 ("On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.").

## III

In her appellate brief, Mayer argues that the Bankruptcy Court (1) committed

error when it found that Michigan law impressed her IRA proceeds with a constructive trust, and (2) should have determined that the designated liens within the judgment of divorce were avoidable as preferential transfers pursuant to 11 U.S.C. § 547(b).

With respect to the first prong of her argument, Mayer contends that (1) the divorce court was without authority to grant a separate property interest in the IRA to the Creditors; (2) the Creditors are not entitled to a constructive trust by operation of Michigan law because (a) none of them contributed to the acquisition, improvement, or accumulation of the IRAs and (b) she did not wrongfully acquire the IRAs at the expense of the Creditors; (3) the equitable doctrine of constructive trust is not available where, as here, there exists an adequate remedy at law; and (4) impressing an exempt IRA with a constructive trust violates public policy.

In response, the Creditors initially raise two procedural or jurisdictional arguments; to wit, that (1) some of Mayer's arguments, which were not raised before the Bankruptcy Court, have not been preserved for argument before this Court; and (2) pursuant to the *Rooker–Feldman* doctrine, this Court does not have jurisdiction to consider any contention that the divorce court made an improper award. The Creditors also dispute each of Mayer's arguments on the merits, and argue that the Bankruptcy Court's determination was substantively correct.

## IV.

### A.

The Creditors argue that, because Mayer did not raise the above-noted arguments (1), (2)(a), and (3) before the Bankruptcy Court, her contentions have been impliedly waived and should not be considered by

this Court. In her response, Mayer disagrees, arguing that "the constructive trust argument was addressed quite extensively" before the Bankruptcy Court.

Moreover, she submits that, even if these arguments had not been raised below, they should be considered by this Court because a refusal to consider those arguments would not serve the purposes of the waiver rule. More broadly, Mayer characterizes the waiver argument as nothing more than an "attempt to divert attention away from the issue" because the "Creditors have so little confidence in the merits of their own constructive trust defense." (Appellant's Br. at 1).

■ "Ordinarily an appellate court does not give consideration to issues not raised below." *Hormel v. Helvering*, 312 U.S. 552, 556, 61 S.Ct. 719, 85 L.Ed. 1037 (1941). This rule serves three distinct policies. "The first is to ease appellate review by having the district court first consider the matter. The second is to ensure [ ] fairness to litigants by preventing surprise issues from appearing on appeal. And the third is to promote judicial economy and the finality of judgments." *Fairlane Car Wash, Inc. v. Knight Enters., Inc.*, 396 Fed.Appx. 281, 286 (6th Cir.2010) (unpublished) (citations and internal quotation marks omitted).

■ Mayer does not contend that she specifically raised the above-listed arguments before the Bankruptcy Court. Rather, she submits that, because the issue of the imposition of a constructive trust was argued extensively before—and was considered by—the Bankruptcy Court, all arguments related to the imposition of a constructive trust were raised before the Bankruptcy Court and thus were not waived. However, simply because an issue was raised below does not mean that all arguments related to that issue are preserved. For example, in *Fairlane Car*

*Wash,* the district court, after holding that the defendant had violated the Petroleum Marketing Practices Act, 15 U.S.C. § 2801 et seq. ("PMPA"), granted the plaintiff's request for attorney fees under the statute. 396 Fed.Appx. at 287. The defendant appealed, claiming that the attorney fees should not have been awarded because the PMPA was inapplicable to the transactions at issue. The Sixth Circuit Court of Appeals, noting that the plaintiff had (1) alleged violations of the PMPA and (2) expressly requested attorney fees pursuant to that statute, determined that the defendant had waived the argument that the cited statute was inapplicable by failing to so argue below. *Id.* Similarly, the presentation of issues related to the imposition of a constructive trust—even if those issues were central to the proceedings below—does not mean that Mayer may now raise new, previously-unargued issues with respect to that doctrine. *See Chao v. Hall Holding Co., Inc.,* 285 F.3d 415, 427 (6th Cir.2002) (citation and internal quotation marks omitted) ("[W]e review the case presented to the district court rather than a better case fashioned after the district court's order.").

 However, deviations from the waiver rule "are permitted in exceptional cases or particular circumstances, or when the rule would produce a plain miscarriage of justice." *Pinney Dock & Transp. Co. v. Penn Cent. Corp.,* 838 F.2d 1445, 1461 (6th Cir.1988) (citations and internal quotation marks omitted); *see also Holder v. Newport (In re Holder),* 23 F.3d 407, 1994 WL 163760, at *2 (6th Cir.1994) (unpublished table decision) (discussing applicability of rule relating to district court review of appeals from bankruptcy court judgments and listing cases). However, these exceptions are quite narrow, and whether to consider an argument first made on appeal is left to the discretion of the reviewing court. *Poss v. Morris (In re Morris),* 260 F.3d 654, 663–64 (6th Cir.2001).

The Sixth Circuit has articulated the following set of principles that should guide an appellate court's discretion in determining whether to consider an issue not raised below:

> First, we *may* deviate from the general rule if this is an exceptional case, if declining to review issues for the first time on appeal would produce a plain miscarriage of justice, or if this appeal presents a particular circumstance warranting departure. We also *may* hear an issue for the first time on appeal if doing so would serve an overarching purpose other than simply reaching the correct result in this case. Finally, we *should* address an issue presented with sufficient clarity and requiring no factual development if doing so would promote the finality of litigation in this case.

*Id.* at 664 (citations and internal quotation marks omitted).

 Turning back to the case at hand, the Court notes that the challenged issues (1) are purely legal, (2) require no further factual development, and (3) have been fully briefed by the parties in their respective appellate pleadings. Furthermore, a resolution of the contested issue would likely promote finality in this litigation. Therefore, the Court concludes that the new arguments raised by Mayer fall within the third category of exception and its consideration of these issues is appropriate. *See Pinney Dock,* 838 F.2d at 1461 ("[T]o the extent the issue is presented with sufficient clarity and completeness and its resolution will materially advance the progress of this already protracted litigation, we should address it."); *Foster v. Barilow,* 6 F.3d 405, 407 (6th Cir.1993) (citations and internal quotation marks omitted) ("The *Pinney Dock* exception is most commonly applied where the issue is

one of law, and further development of the record is unnecessary. The rationale for this exception is to promote finality in the litigation process.").

## B.

■ The Creditors contend that, to the extent that Mayer requests the Court to review and reject the judgment of divorce rendered by the state court, these arguments are precluded by the *Rooker–Feldman* doctrine. This doctrine, as articulated by the Supreme Court in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005), bars a federal district court from hearing "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." The reason for this rule is that appellate review of final judgments of the highest state court is vested in the Supreme Court, 28 U.S.C. § 1257, and it follows by "negative inference that . . . such review may not be had in the lower federal courts," *Lawrence v. Welch*, 531 F.3d 364, 368 (6th Cir.2008); *see also Exxon*, 544 U.S. at 283, 125 S.Ct. 1517 ("[A]ppellate jurisdiction to reverse or modify a state-court judgment is lodged, initially by § 25 of the Judiciary Act of 1789, 1 Stat. 85, and now by 28 U.S.C. § 1257, exclusively in [the Supreme] Court. Federal district courts . . . are empowered to exercise original, not appellate, jurisdiction.").

■ The *Rooker–Feldman* doctrine is only implicated when the plaintiff complains of being injured by the state court decision itself. *McCormick v. Braverman*, 451 F.3d 382, 394 (6th Cir.2006). The doctrine is not implicated simply because a party attempts to litigate an issue in federal court that has already been litigated in state court. Where a "federal plaintiff present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . , then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." *Exxon*, 544 U.S. at 293, 125 S.Ct. 1517 (citations and internal quotation marks omitted).

Here, the Creditors contend that two of Mayer's arguments expressly seek to have this Court review and reject the judgment of the state divorce court; to wit, her claims that (1) the divorce court lacked authority to grant them a property interest in the IRA proceeds, and (2) impressing an exempt IRA with a constructive trust violates public policy. Mayer disagrees, countering that she does not seek to reverse the divorce judgment, but rather seeks to avoid, via the bankruptcy code, the lien created thereby. Similarly, Mayer insists that she has not asked the Court to reverse a decision by the divorce court to create a constructive trust. Rather, she submits that the Bankruptcy Court erred when it concluded that the divorce court had done so.

■ To the extent that Mayer complains of an injury caused by the divorce court judgment which, in her opinion, wrongly entered a lien in favor of the Creditors, her claims fall squarely within the *Rooker–Feldman's* prohibition. However, to the extent that she complains of the interpretation of the divorce court judgment by the Bankruptcy Court or the effect of the bankruptcy proceedings on the liens created thereby, these arguments are properly before the Court. Therefore, the Court will not review or reject the terms of the judgment of divorce. However, neither *Rooker–Feldman* nor the ordinary principles of preclusion are implicated by Mayer's arguments with respect to

the Bankruptcy Court's determination of the meaning and effect of that judgment.

## V.

### A.

In the underlying adversary action, Mayer seeks to avoid, as preferential transfers, 11 U.S.C. § 547(b), the liens that the divorce court granted in favor of the Creditors. Section 547(b) gives the power to avoid preferential transfers to a bankruptcy trustee, and § 522(h) allows the debtor to pursue avoidance in this fashion when the trustee does not attempt to do so. To establish a preferential transfer, the trustee or debtor must show, *inter alia*, that the challenged "transfer of an interest of the debtor in property" (1) was made while the debtor was insolvent and within ninety days before the filing of the bankruptcy petition, and (2) resulted in the creditor receiving more than it would have received in a Chapter 7 case. § 547(b).

■ All of the elements of a preferential transfer—save one—are indisputably established here. However, the parties differ as to whether the IRA proceeds were an "interest of the debtor in property." The Supreme Court has held that an "interest of a debtor in property" for the purpose of § 547(b) is "coextensive with 'interests of the debtor in property' as that term is used in 11 U.S.C. § 541(a)(1)." *Begier v. IRS*, 496 U.S. 53, 59 n. 3, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990). The latter statute states that the "property of the estate" includes "all legal or equitable interests of the debtor in property as of the commencement of the case." § 541(a)(1). This broad definition is limited by § 541(d), which provides that

"[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate under subsection (a)(1) . . . of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold." § 541(d). Thus, "[b]ecause the debtor does not own an equitable interest in property he holds in trust for another, that interest is not 'property of the estate.' Nor is such an equitable interest 'property of the debtor'[1] for purposes of § 547(b)." *Begier*, 496 U.S. at 59, 110 S.Ct. 2258. The Sixth Circuit has held that this reasoning applies with equal force to express and to constructive trusts. *In re Morris*, 260 F.3d at 670 (citations omitted) ("Other circuits have held that this reasoning applies as fully to constructive trusts as express trusts, as have we in dicta. . . . We also hold that a constructive trust does not constitute a voidable preference under the bankruptcy code."). The end result of all of this is that, if Mayer held the IRA proceeds in trust for the Creditors, then those proceeds were not property in which she held an interest under § 547(b)—and, therefore, are not subject to avoidance in the underlying preference action.

■ State law determines if and to what extent a constructive trust will be imposed. *In re Atlantic Mortg. Corp.*, 69 B.R. 321 (Bankr.E.D.Mich.1987) (citing *Jaffke v. Dunham*, 352 U.S. 280, 281, 77 S.Ct. 307, 1 L.Ed.2d 314 (1957)). Here, there is no dispute that Michigan law applies. Under Michigan law, "[c]onstructive trusts arise by operation of law, not by agreement or from intention, and are raised by a court of equity whenever it

---

1. In *Begier,* the Supreme Court construed an earlier version of § 547(b) that use the phrase "property of the debtor" instead of "an interest of the debtor in property." However, the Court expressly stated that the subsequent amendment did not have any impact on its analysis. *Begier,* 496 U.S. at 59 n. 3, 110 S.Ct. 2258.

becomes necessary to prevent a failure of justice." *Richardson v. Huntington Nat'l Bank (In re CyberCo Holdings, Inc.)*, 382 B.R. 118, 127 (Bankr.W.D.Mich.2008) (quoting *McCreary v. Shields*, 333 Mich. 290, 52 N.W.2d 853, 856 (1952)). In the bankruptcy context, a constructive trust may arise in at least two distinct ways; namely, (1) property "already impressed with a constructive trust by a court in a separate proceeding [pre-petition]" may be excluded from the bankruptcy estate, *McCafferty v. McCafferty (In re McCafferty)*, 96 F.3d 192, 197 (6th Cir.1996) (quoting *XL/Datacomp, Inc. v. Wilson (In re Omegas Grp., Inc.)*, 16 F.3d 1443, 1451 (6th Cir.1994)); and (2) a bankruptcy court may impose a constructive trust[2] under the applicable state law where the subject property would not be included in the bankruptcy estate even in the absence of the constructive trust, *In re McCafferty*, 96 F.3d at 197. Here, the Creditors argued—and the Bankruptcy Court concluded—that, under the principles of Michigan law, paragraph 76 of the divorce judgment constituted a pre-petition judicial decision impressing $50,000 of Mayer's IRA proceeds with a constructive trust in favor of the Creditors.

### B.

Mayer advances several arguments which, in her judgment, establish that these proceeds were not impressed with a constructive trust. Of these, three can—and will—be quickly addressed.

First, she submits that the divorce court was without authority to adjudicate the rights of persons other than the parties to the divorce action. Thus, in her opinion, the divorce court "lacked authority to even grant a lien in favor of the non-party creditors much less to grant them a beneficial interest in her exempt property." (Appellant's Br. at 8). However, it is indisputable that the divorce court *did* grant such a lien. Indeed the language of the judgment of divorce was explicit that the Creditors "shall retain a lien on [the respective party's] share of the marital assets to insure payment of his fee[s]." (J. of Divorce ¶¶ 96, 97). As noted above, the Court may not entertain Mayer's request that it review and reject the state court order. As such, the argument that the divorce court lacked authority to grant a lien in favor of the Creditors must be rejected. On the other hand, because the divorce court did not expressly create a constructive trust in favor of the Creditors, Mayer's argument that it did not have had authority to do so is (1) relevant to an interpretation by the Court as to the effect of the divorce court's judgment, and (2) not implicated by *Rooker–Feldman*.

---

**2.** Although Mayer contends that a bankruptcy court may never impose a constructive trust, the case cited by her for this proposition, *In re Omegas Grp., Inc.*, 16 F.3d at 1451, does not draw such a categorical line. Rather, the Sixth Circuit held that "§ 541(d) simply does not permit a claimant *in the position of* [*this creditor*] to persuade the bankruptcy court to impose the remedy of constructive trust for alleged fraud committed against it by the debtor in the course of their business dealings, and thus to take ahead of all creditors, and indeed, ahead of the trustee." *Id.* (emphasis added). The Sixth Circuit has subsequently clarified that the "imposition of a constructive trust might be appropriate when property in bankruptcy was not subject to distribution to creditors and so did not implicate the rationale of ratable distribution." *In re Morris*, 260 F.3d at 666; *see also In re McCafferty*, 96 F.3d at 196–97 (constructive trust not inappropriate with respect to property that would not be subject to distribution to creditors because fundamental policy of equality of distribution among creditors is not implicated with respect to non-distributable property). However, because the Creditors have not advanced this argument, the Court will only consider the first type of constructive trust.

■ Next, Mayer argues that, because she did not wrongfully acquire the IRAs at the expense of the Creditors, Michigan law would not impress them with a constructive trust. Although wrongful acquisition is one basis for the recognition of a constructive trust, it is not a necessary precondition. Indeed, a constructive trust may be appropriate where property, although not wrongfully acquired, is unconscionably retained or otherwise results in its holder's unjust enrichment. *See Kent v. Klein,* 352 Mich. 652, 91 N.W.2d 11, 14 (1958) (citations omitted) ("Fraud in the inception we do not require, nor deceit, nor chicanery in any of its valid guises, for it is not necessary that property be wrongfully acquired. It is enough that it be unconscionably withheld.... It is enough, to compel the surrender, that one feed and grow fat on that which in good conscience belongs to another, that he enjoy a windfall resulting in his unjust enrichment...."); [3] *see also Chapman v. Chapman,* 31 Mich.App. 576, 188 N.W.2d 21, 23 (1971) (quoting *Kent*); *Omaha Nat'l Bank v. T & T Parts Warehouse, Inc. (In re T & T Parts Warehouse, Inc.),* 39 B.R. 399 (Bankr.W.D.Mich.1984) (same). Thus, a constructive trust may be imposed in a situation where the subject property was wrongfully obtained or where continued possession of the property constitutes unconscionable conduct or unjust enrichment. *See Morris Pumps v. Centerline Piping,*

*Inc.,* 273 Mich.App. 187, 729 N.W.2d 898 (2006) (citing *Kammer Asphalt Paving Co., Inc. v. E. China Twp.,* 443 Mich. 176, 504 N.W.2d 635, 641 (1993)) ("A court may impose a constructive trust when necessary to do equity or avoid unjust enrichment.... A constructive trust may thus be imposed under any circumstance that renders it unconscionable for the holder of legal title to retain and enjoy the property.").

Mayer also contends that a constructive trust cannot be imposed because the Creditors have an adequate remedy at law in the form of a money judgment. While this is true in the usual case, it is not true with respect to a purported constructive trustee who, like Mayer, is insolvent. *See* Restatement (First) of Restitution § 160, cmt. f ("The constructive trust arises apart from the insolvency of the constructive trustee, although a court of equity may refuse to enforce it specifically if the remedy at law is adequate; but if the constructive trustee is insolvent so that a judgment or decree for money would not be an adequate remedy, the constructive trust then becomes specifically enforceable.").

■ Of course, insolvency leading to a lack of an adequate remedy at law is not enough—standing alone—to justify the imposition of a constructive trust. As will be discussed *infra,* a constructive trust re-

---

**3.** Interestingly, Mayer cites *Kent* for the proposition that a constructive trust is created under Michigan law *only* when property was wrongfully acquired. Yet, *Kent* quite explicitly states the contrary conclusion. She also cites *Queen v. Queen,* No. 190762, 1998 WL 1992920 (Mich.App. Mar.6, 1998) (unpublished), for the proposition that it was error to impose a constructive trust due to lack of evidence of wrongdoing by the purported constructive trustee. However, this is not an altogether accurate summary of that case. There, the court affirmed the imposition of a constructive trust on the subject property to prevent the constructive trustee's unjust enrichment, but it rejected the trial court's alternative holding that a constructive trust would also be appropriate based on wrongdoing due to a lack of evidence of any wrongdoing in the acquisition of the property. *Id.* at *4. It is true that, where a constructive trust is based on the constructive trustee's wrongdoing, such improper behavior must have occurred in the acquisition, rather than the retention, of the subject property. *Id.* at *4 n. 1. This same restriction does not apply, however, where the constructive trust is imposed on some other basis.

quires that the purported constructive trustee be under an equitable—and not simply legal—duty to convey the subject property. *See id.* ("The situation which arises where a constructive trustee is insolvent is to be contrasted with the situation where a person who is under a merely personal liability becomes insolvent. In the latter case, a claimant having no beneficial interest in any property held by the defendant is not entitled to specific enforcement of his claim because the other claimants are in the same situation and it is impossible specifically to enforce all the claims against an insolvent person."); Andrew Kull, *Restitution in Bankruptcy: Reclamation and Constructive Trust,* 77 Am. Bankr.L.J. 265, 290 (1998) ("Judgment that the debtor owes the claimant $50,000—in restitution or otherwise-leaves the claimant a creditor like other creditors. What the claimant needs is a judgment that recognizes his ownership interest in identifiable (i.e., traceable) assets. . . .").

### C.

■ Considerably more complicated is Mayer's argument that a constructive trust cannot be imposed under Michigan law unless the purported beneficiary of the trust had some previous connection to the trust res—"whether by acquisition, improvement, accumulation, or otherwise." (Appellant's Reply Br. at 3). The parties agree that a constructive trust cannot be imposed except upon a "res (i.e., identifiable property) in the possession or control of the defendant against which to impose that trust." *In re CyberCo Holdings,* 382 B.R. 118, 128–29 (Bankr.E.D.Mich.2008). Moreover, the parties agree that the trust res must be "traceable." However, they sharply differ with respect to how the word "traceable" is defined in this context. Mayer submits that this requirement means that "Michigan law absolutely requires a party seeking to benefit from a

constructive trust to show that it had some previous connection to the trust res before a constructive trust may be imposed." (Appellant's Reply Br. at 3). The Creditors, meanwhile, aver that "[t]here is simply no authority to support the contention that [they] were required to play some role in the acquisition or improvement of the Proceeds of the IRA Accounts before a constructive trust could be imposed." (Appellees' Br. at 13).

■ Although the tracing requirement has been frequently applied, it has rarely been explicitly defined. The oft-cited statement that, "[w]here money or property has been taken from its owner by fraud and deceit, it is impressed with a constructive trust, and when clearly traced may, [and] should be, by a court of equity, returned directly to its owner," *e.g., In re CyberCo Holdings,* 382 B.R. at 129 (quoting 3 Pomeroy on Equity Jurisprudence, § 1053), unfortunately fails to specify to or from what or whom the subject money or property must be traced. However, there is a common thread among all of the cases; namely, that the purported beneficiary must be able to point to specific, identifiable property to which he is allegedly entitled.

One dimension of tracing—although not relevant here—involves the requirement that, when the subject property has changed in form, the purported beneficiary of the constructive trust must be able to trace the proceeds of the property back to its original form. *See, e.g., In re CyberCo Holdings,* 382 B.R. at 129 n. 9 (citing *Detroit Trust Co. v. Struggles,* 283 Mich. 471, 278 N.W. 385, 386 (1938), for the proposition that it "unequivocally limits the imposition of a constructive trust to only those instances where the defendant is in possession or control of either the subject property itself or proceeds traceable to

that property"); *In re Estate of Clark*, No. 282000, 2009 WL 1028228, at \*2 (Mich. App. Apr.16, 2009) (quoting *Mich. Nat'l Bank v. Am. Express Co.*, 307 Mich. 245, 11 N.W.2d 875, 880 (1943)) ("So long as the trust property can be traced and followed into other property into which it has been converted, that remains subject to the trust."). In this case, where, apparently, the subjects of the purported trust (i.e., the IRA accounts) have not been converted into any other form, this type of tracing is not implicated.

Michigan courts—and those federal courts applying Michigan law—have also spoken of the tracing requirement as necessitating a demonstration that the "money or property on which the trust is imposed ... be 'clearly traced' to the beneficiary of the constructive trust." *United States v. One Silicon Valley Bank Account, 3300355711, in the Amount of One Hundred Thirteen Thousand Nine Hundred Fifty–Two and 62/100 Dollars ($113,952.62)*, 549 F.Supp.2d 940, 955 (W.D.Mich.2008) (quoting *Biddle v. Biddle*, 202 Mich. 160, 168 N.W. 92, 94 (1918)). Mayer submits that this tracing requirement means that the beneficiary must have contributed to the acquisition, accumulation, or improvement of the trust res. Whatever intuitive sense this gloss might make in the context of a constructive trust based on wrongful acquisition, it appears illogical to import it into the context of a constructive trust based on unconscionable retention or unjust enrichment. This is because an unjust enrichment claim does not require that the purported beneficiary had, at one time, owned, possessed, or contributed to the subject property. *E.g., Morris Pumps*, 729 N.W.2d at 904 ("Thus, in order to sustain a claim of quantum meruit or unjust enrichment, a plaintiff must establish (1) the receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant.").

Rather, this aspect of tracing appears to be another way of wording the requirement that there must be an identifiable trust res in which the beneficiary has some recognized interest—legal or equitable: "Tracing is a process where the claimant basically must be able to point to the identifiable property or fund and say, 'This is mine.' If the funds or property are untraceable—meaning the claimant cannot determine where they were deposited or what the debtor has done with them—the equitable remedy is not available." Ashley S. Hohimer, *Constructive Trusts in Bankruptcy: Is an Equitable Interest in Property More than Just a "Claim"?*, 19 Bankr.Dev. J. 499, 510–11 (2003); *see also* Kull, *supra*, at 283–84. In many cases, of course, the claimant's recognized interest in the property will have arisen from his having contributed to its acquisition or accumulation. However, Mayer has not presented the Court with—and it has not found—any case which specifically holds that such a contribution is a precondition for the imposition of a constructive trust. Likewise, the Court has not located any authority that would preclude a court order from simultaneously granting the claimant an interest in specifically identifiable property—as the judgment of divorce did here—and imposing a constructive trust on the basis of that interest. Thus, Mayer's argument to the contrary notwithstanding, it does not follow that a constructive trust could not arise out of the very order which first granted an interest to the Creditors. However, it also does not follow that a constructive trust *did* arise out of the challenged order. As discussed next, a constructive trust could have arisen under the applicable law in Michigan if there was some basis for finding that the

Creditors had an equitable interest in the subject property.

## D.

■ The Court now turns to the dispositive issue; namely, whether the Bankruptcy Court properly determined that the order of the divorce court regarding the Creditors was the functional equivalent of a divorce court directive which distributed marital assets between spouses. The Bankruptcy Court relied heavily on *In re Combs*, 435 B.R. 467 (Bankr.E.D.Mich. 2010), in reaching its conclusion that the judgment of divorce impressed the IRA assets with a constructive trust. In the *In re Combs* litigation, a consent judgment of divorce contained a provision which granted the debtor's former wife "as her sole and separate property ... [o]ne-half [the] marital interest" in the debtor's pension. The court also noted that, under Michigan law, pension benefits that accrued during the marriage are considered to be a part of the marital estate and are to be distributed by the state court in the judgment of divorce. *Id.* at 471 (citing Mich. Comp. Laws § 552.18(1)). The court, in referring to the law of Michigan, stated that "when a divorce judgment purports to transfer a separate ownership interest in a pension from one spouse to the other, that ownership interest transfers when the divorce judgment is entered." *Id.* at 472 (citing Mich. Comp. Laws § 552.401 and *Estes v. Titus*, 751 N.W.2d 493, 497 (2008)). The court reasoned that, as of that moment, the debtor retained only a bare legal title in the benefits, and his spouse became the equitable owner thereof. *Id.* at 478 (citing *In re McCafferty*, 96 F.3d at 199). Thus, each time the debtor received a pension payment, he held his former wife's portion of that payment in constructive trust. *Id.* at 477.

In the instant case, the Bankruptcy Court determined that the award which was granted to the Creditors in paragraph 76 of the judgment of divorce "for purposes of this issue is no different than the award in the divorce decree provision in *Combs*." (Bankr.Op. at 8, Bankr.Docket No. 30). As a result, the Bankruptcy Court concluded that Mayer "held the proceeds of the $50,000 worth of H & R Block IRAs in trust at the time that she filed her chapter 7 bankruptcy, and, therefore, the proceeds are not susceptible to [her] avoidance action under 11 U.S.C. § 547(b)." (*Id.*)

Mayer argues that *In re Combs* does not govern the present matter because an order of division of marital property between spouses is fundamentally different than an order to pay nonparty creditors.[4] The Creditors, for their part, while acknowledging that *In re Combs* is not "on all fours" with the present case, assert that its analysis is fully applicable here with respect to the imposition of a constructive trust.

An analysis of the action in *In re Combs* reveals that it unfolded in two parts; namely, (1) under the principles of Michigan law regarding the division of marital property in divorce litigation, an award of pension benefits that accrued during the marriage creates an instantaneous equitable interest in those benefits in the transferee-spouse, and (2) because the debtor's former wife held an equitable interest in the benefits, the debtor held her portion of

---

4. Mayer also asserts that *In re Combs* is distinguishable from the instant action because—unlike the property acquired during the marriage which was found to be an appropriate res for the imposition of a constructive trust therein—the IRAs in the case before this Court are not traceable to the Creditors. However, it should also be noted that this argument has been considered and rejected by the Court.

those benefits in constructive trust. The Court agrees with Mayer that (1) *In re Combs* does not fully resolve the issues in the present case, and (2) the Bankruptcy Court erred in holding to the contrary. The Creditors cannot rely upon the first part of that analysis here—the laws and cases upon which that conclusion rested were quite clearly limited to the context of, and dependent upon the law of Michigan regarding, the division of marital property between spouses. A necessary element of that analysis—namely, when pension benefits that were accrued during a marriage are distributed in a divorce judgment, Michigan law grants the soon-to-be-former spouse an equitable interest in his or her portion of those benefits—is not applicable here with respect to the Creditors.[5]

Nevertheless, if the Creditors can establish some *other* basis by which the judgment of divorce granted them an equitable interest in the IRA proceeds, then the second part of the *In re Combs* analysis (namely, that a pre-petition court-granted equitable interest in an asset can be the basis for the imposition of a constructive trust with respect to that asset) would come into play. For example, in *In re Morris*, 260 F.3d at 667–68, the Sixth Circuit determined that a pre-petition order to convey real property gave rise to a constructive trust because, under Ohio law, "contracts for the conveyance of real property [fall] within the jurisdiction of courts of equity because of the inherent inadequacy of any legal remedy." Therefore, a court order which requires the transfer of real property automatically gives rise to an equitable duty to convey the property and, in so doing, creates a constructive trust in favor of the equitable owner. *Id.* at 668. However, the court made clear that some-

thing more than a simple failure to live up to a legal obligation is required to justify the imposition of a constructive trust. *Id.* ("Accordingly, every wrongful acquisition or holding of property will not give rise to a constructive trust. For example, breach of contract or failure to pay a debt without more cannot give rise to a constructive trust."). Thus, there must be some other basis pursuant to which Mayer was under an equitable—and not simply a legal—duty to convey the IRA proceeds in order to support the finding that the judgment of divorce impressed those proceeds with a constructive trust.

The parties have not briefed that question before this Court, and the Bankruptcy Court did not consider the question in its opinion. However—and in light of the determination by the Court that the Bankruptcy Court erred in deeming the directive from the divorce court that Mayer liquidate certain assets in order to pay the Creditors' fees the functional equivalent of an order of distribution of marital assets— proper resolution of this matter depends upon that very question. For this reason, the Court will, and does, vacate the order of the Bankruptcy Court and remand the case for its consideration as to whether there was any other basis—aside from the laws that are specific to the distribution of marital property between spouses—for finding that the Creditors had an equitable interest in Mayer's IRA assets.

## VI.

For the reasons that have been set forth above, the Court vacates the order of the Bankruptcy Court which granted the Creditors' motion for summary judgment, and remands this legal proceeding to the Bankruptcy Court for its consideration as

---

5. Moreover, neither the parties nor the Bankruptcy Court have cited—and this Court has not located—any Michigan case in which a judgment of divorce imposed a constructive trust in favor of anyone other than the party-spouses.

to whether the Creditors possessed an equitable interest in the IRA proceeds.

IT IS SO ORDERED.