TAYLOR GROUP v ANR STORAGE COMPANY

Docket No. 102714. Decided July 23, 1996. On application by the plaintiffs for leave to appeal, the Supreme Court, in lieu of granting leave, reversed the judgments of the Court of Appeals and the circuit court, and remanded the case to the circuit court for further proceedings. Rehearing denied 453 Mich 1204.

The Taylor Group and other owners of mineral rights in the Blue Lake 18A gas field agreed to sell their rights to ANR Storage Company for initial and contingent payments based on ANR's estimate of gas remaining in the field. ANR subsequently obtained releases from each of the plaintiffs at the time the contingent payments were made. Thereafter, the plaintiffs came to suspect that the volume of gas condensate remaining in the field was greater than the amount estimated by ANR, and brought an action for damages in the Kalkaska Circuit Court against ANR, alleging that the estimate had been either intentionally or negligently false. The court, William A. Porter, J., granted summary disposition for ANR on the ground that the plaintiffs had signed releases, but had failed to tender the amount received in consideration of the releases as required under *Stefanac v Cranbrook Educational Community (After Remand)*, 435 Mich 155 (1990). The Court of Appeals, MacKENZIE, P.J., and GRIFFIN and NEFF, JJ., affirmed in an unpublished opinion per curiam (Docket No. 173259). The plaintiffs seek leave to appeal.

In a unanimous opinion per curiam, the Supreme Court *held*:

The tender rule of *Stefanac* is inapplicable in this case. Despite the labeling of the documents signed by the plaintiffs to obtain their contingent payments, it is plain that the nominal releases were not in fact releases of all liability arising from the original transactions. They were, at most, acknowledgments that the defendant had fulfilled its contractual obligations to make the contingent payments.

Reversed and remanded.

*Peter J. Zirnhelt* and *Richard P. Carroll* for the plaintiff.

*Terrence O'Reilly* for the defendant.

PER CURIAM. The plaintiffs sold mineral rights to the defendant for a price calculated by using the defendant's estimate of the remaining value of those rights. Later, the plaintiffs came to believe that they had been defrauded, and filed suit. The circuit court granted summary disposition for the defendant on the ground that the plaintiffs had signed a release, and had failed to tender the amount they had received in consideration of the release. The Court of Appeals affirmed. We reverse the judgments of the Court of Appeals and the circuit court, and remand this case to the circuit court for further proceedings.

I

In the early 1980s, the plaintiffs owned mineral rights[1] in a region of Kalkaska County called the Blue Lake 18A gas field.[2] Though nearing depletion, the field was still producing natural gas and natural gas condensate.[3]

Defendant ANR Storage Company decided to develop an underground gas storage facility in this area of Kalkaska County,[4] and approached the plaintiffs with offers to buy their mineral rights. The plaintiffs agreed to the sales, and signed agreements providing that

- the plaintiffs would deed their mineral rights to ANR,

---

[1] Some of the current plaintiffs are successors of property owners.

[2] This case has not been tried. For purposes of this opinion, we view the facts in a light favorable to the plaintiffs.

[3] In deposition testimony, one witness described natural gas condensate as "a liquified form of the gas."

[4] Defendant ANR had previously converted several other natural gas fields in northern Michigan to storage facilities.

- ANR would pay the plaintiffs a sum based on the remaining gas in the field as of June 1, 1983 (this estimate was made by ANR and accepted by the plaintiffs[5]),

- the then-current lessee of the plaintiffs' mineral rights would continue to make royalty payments to the plaintiffs until June 1, 1983, and

- ANR would make "contingent payments" to the plaintiffs if (a) the unit price of natural gas rose above a specified level before June 1, 1983, or (b) production levels (and the plaintiffs' production-based royalty checks) were reduced before June 1, 1983.

ANR made the required initial payments, and the plaintiffs deeded their rights. Later, it was determined that the "contingent payments" were to be made. When ANR presented the second set of checks to the plaintiffs, it obtained each person's signature on this form:

*RECEIPT AND RELEASE*

The Undersigned hereby acknowledge receipt of the sum of $_____ cash in hand paid by ANR Storage Company in full and complete payment and satisfaction of all obligations owed by ANR Storage Company to the undersigned

---

[5] The agreement contained this paragraph:

Attachment I sets forth the detailed calculations of the cash payment to be made by Buyer, including the basis for calculation. Seller's Net Decimal Interest is the same decimal used by Amoco to allocate royalty payable from production. In the opinion of Buyer, the total of the cash payment, royalty checks to be received and contingent payments, if any, equals or exceeds the market value of the Mineral Rights which Buyer is offering to purchase from Seller.

for, in consideration of, and related to, the execution by the undersigned of a Mineral Deed . . . including all obligations arising out of representations (whether oral or in writing) made by ANR Storage Company and arising out of a letter and Terms of Offer addressed to the undersigned by John R. Milam, Director, Land and Storage Acquisition, dated 03/08/83; and the undersigned hereby release ANR Storage Company obligations [sic].

In the early 1990s, the plaintiffs came to believe that the Blue Lake field had held a far greater volume of gas condensate in 1983 than ANR had led them to believe. In 1993, the plaintiffs filed suit, alleging that ANR's calculations had been "either intentionally false and incorrect, or negligently false and incorrect." To remedy this "misrepresentation," the plaintiffs sought a monetary award.

In its answer, ANR offered the affirmative defense that each plaintiff had accepted a cash payment in exchange for the execution of a release of "all obligations arising out of representations (whether oral or in writing) made by ANR Storage Company" in connection with the sale.

ANR later moved for summary disposition on the basis of the release. In its motion, ANR further asserted that a person seeking to rescind a release must first tender back the amount paid in consideration of the release. *Stefanac v Cranbrook Educational Community (After Remand)*, 435 Mich 155; 458 NW2d 56 (1990).

In a written opinion resolving the motion, the circuit judge stated his own agreement with the procedural arguments of the plaintiffs, but said that the court was required by *Stefanac* to grant summary disposition in favor of ANR.

The Court of Appeals affirmed.[6] Again, *Stefanac* was thought to control.

The plaintiffs have applied to this Court for leave to appeal.

II

The principle applied by the lower courts comes from *Carey v Levy*, 329 Mich 458, 460-465; 45 NW2d 352 (1951), and earlier decisions. The most recent exposition of the precept is in *Stefanac*, in which this Court explained the basic rule[7] and offered this holding:

> We hold that when a plaintiff has entered into a settlement agreement tender of consideration recited in the agreement must occur not only within a reasonable time after execution of the agreement, but in all cases prior to or simultaneously with the commencement of any proceeding raising a legal claim in contravention of the agreement. [435 Mich 159.]

A great deal may be said about *Stefanac* and the earlier cases, and about the steps that must be followed by a party who seeks to set aside a release and litigate the underlying controversy.[8] However, the tender rule is inapplicable in the present case.

---

[6] Unpublished opinion per curiam, issued March 27, 1995 (Docket No. 173259).

[7] It is a well-settled principle of Michigan law that settlement agreements are binding until rescinded for cause. Further, tender of consideration received is a condition precedent to the right to repudiate a contract of settlement. See, generally, *Randall v Port Huron, St C & M C R Co*, 215 Mich 413; 184 NW 435 (1921); *Kirl v Zinner*, 274 Mich 331; 264 NW 391 (1936); *Leahan v Stroh Brewery Co* [420 Mich 108; 359 NW2d 524 (1984)]. [435 Mich 163.]

[8] A party seeking rescission of a release must first tender the amount received in consideration of the release. Then the party may go forward with the attempt to make the showing necessary to gain rescission of the

Despite the labeling of the document signed by the plaintiffs to obtain their contingent payments, they did not execute a binding release.

In *Stefanac* (and in *Leahan v Stroh Brewery Co*, 420 Mich 108; 359 NW2d 524 [1984]), the employer discharged an employee under circumstances that could give rise to liability. The employer obtained an early compromise, exchanging significant consideration for a release of liability. The employee's later attempts to rescind the release failed, in part because the consideration for the release was not tendered back within a reasonable time.

In the present case, the plaintiffs simply executed a contract with ANR. They were not compromising liability. After agreement had been reached, the plaintiffs deeded their mineral rights in exchange for a payment of money. By the terms of the agreement, the dealings between the plaintiffs and ANR were concluded, except that there remained the possibility of "contingent payments." If they were to be made, the contingent payments would be calculated on a formula found in the original agreement.

As it transpired, the contingent payments *were* required. The plaintiffs each received such a payment, in an amount fixed by the original documents. Without further negotiation or consideration, the checks were accompanied by a putative release. The plaintiffs signed in order to get the checks to which they were already entitled under the original agreement.

On this record, it is plain that the nominal release was not in fact a release of all liability arising from

release. If that rescission is granted, the party may then undertake litigation of the underlying controversy.

the original transaction. It was, at most, an acknowledgment that ANR had fulfilled its contractual obligation to make the contingent payment.

The previously quoted excerpts from *Carey* and *Stefanac* indicate that the tender requirement serves to "provide[ ] a fair and necessary check against the instability of contracts not to sue." 435 Mich 177-178. That laudable goal is not affected in this case, since the plaintiffs did not enter into a separate contract of release—they did not foreswear suit over ANR's actions and statements in conjunction with the original agreement for the sale of the plaintiffs' mineral rights.

For these reasons, we reverse the judgments of the Court of Appeals and the circuit court, and remand this case to the circuit court for further proceedings. MCR 7.302(F)(1).

BRICKLEY, C.J., and LEVIN, CAVANAGH, BOYLE, RILEY, MALLETT, and WEAVER, JJ., concurred.