# STATE OF MICHIGAN

# COURT OF APPEALS

JOHN RUNCO,

Plaintiff-Appellant/Cross-Appellee,

v

JOHN FRANCIS, DAN FRANCIS,
CONTRACTORS EQUIPMENT LEASING,
ENERGY GROUP, INC., UTILITY SERVICE OF
AMERICA, INC., ENERGY GROUP
EQUIPMENT, and ENERGY GROUP
EQUIPMENT LEASING,

Defendants-Appellees/Cross-
Appellants.

UNPUBLISHED
June 18, 2015

No. 317926
Oakland Circuit Court
LC No. 2013-131838-CK

Before: CAVANAGH, P.J., and METER and SHAPIRO, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order granting defendants' motion for summary disposition and closing the case. Defendants cross-appeal, challenging the trial court's failure to address their request for sanctions under MCR 2.114(E) and MCL 600.2591. We affirm the order of summary disposition and remand for further proceedings regarding defendants' request for sanctions.

## I. BACKGROUND

This case involves plaintiff's interests in various business entities that plaintiff received as part of a settlement in a divorce action but that were sold by his former wife, Kimberly Runco, acting pursuant to a power of attorney, to satisfy plaintiff's monetary obligations to her under the divorce judgment. Four of the business entities are defendants in this case, namely, Energy Group Equipment,[1] Contractor's Equipment Leasing, Inc., Utility Services of America, Inc., and

---

[1] Although another limited liability company, Energy Group Equipment Leasing, is also a defendant in this case, plaintiff alleged that this entity is also known as Energy Group Equipment. The limited liability company is generally referred to as "EGE."

-1-

Energy Group, Inc. (hereafter collectively referred to as "the Energy Group companies"). The two individual defendants, John Francis and Dan Francis ("the Francis defendants"), were involved in various businesses with plaintiff, including the Energy Group companies, and were members of EGE.

Kimberly filed the divorce action in April 2007. In March 2009, the circuit court granted Kimberly a power of attorney to act for plaintiff. The order provided for Kimberly to have full use of a power of attorney on April 16, 2009, unless plaintiff made full payment to Kimberly of all amounts due her under the terms of the parties' settlement agreement and divorce judgment or there was a signed agreement acceptable to Kimberly with respect to the sale of certain entities referred to as "Capital Waste and its affiliated entities." The order provided that if plaintiff failed to sign the power of attorney, the order itself could be used in lieu of such a document or the trial court could take further action to obtain a valid power of attorney.

On April 29, 2009, plaintiff executed a general power of attorney authorizing Kimberly to act as his attorney in fact with respect to a number of business entities, including certain Capital Waste entities, EGE, Contractor's Equipment Leasing, Inc., and Utility Services of America, Inc. On June 1, 2009, Kimberly, acting as plaintiff's attorney in fact, entered into an agreement with the Francis defendants. The agreement addressed both a distribution of funds involving the Capital Waste entities and an option for the Francis defendants to purchase plaintiff's membership interest and stock in three of the Energy Group companies (EGE, Contractors Equipment Leasing, Inc., and Utility Services of America, Inc.) for $3.5 million. The agreement required the Francis defendants to exercise the option in writing by August 2, 2010.

Later in 2010, the Francis defendants filed a complaint against Kimberly, seeking specific enforcement of the terms of the option agreement on the ground that they had exercised the option but that Kimberly failed to attend the scheduled closing in November 2010 for their purchase of the Energy Group companies. This action was dismissed in February 2011 pursuant to a stipulated order.

Before the dismissal of the Francis defendants' action, Kimberly, as attorney in fact, entered into a January 28, 2011, agreement with the Francis defendants, the three Energy Group companies named in the earlier option, and a fourth entity, Energy Group, Inc., that, according to the agreement, was wholly owned by Utility Services of America, Inc. This agreement treated the portion of the transaction involving plaintiff's membership interest in EGE as a redemption and an assignment, while the portion involving Utility Services of America, Inc., and Contractors Equipment, Inc., was treated as a purchase and assignment of stock. As part of the agreement, plaintiff's 60 percent interest in EGE and any funds in his capital account were to be assigned back to EGE. Plaintiff's stock in Contractors Equipment Leasing, Inc., and Utility Services of America, Inc., was to be transferred to EGE. The parties also executed mutual releases as part of this agreement. Kimberly was paid $3.5 million for plaintiff's membership interest and stock in the Energy Group companies pursuant to the power of attorney. In addition, an amended promissory note in the principal amount of $1.8 million owed by Utility Services of America, Inc., to plaintiff was assigned by Kimberly, under the power of attorney, to EGE.

Kimberly died in April 2012. In January 2013, plaintiff filed the instant action against the Francis defendants and the four Energy Group companies. Plaintiff alleged that the Francis defendants committed fraud by withholding financial information from Kimberly and that the undisclosed information affected Kimberly's decision to accept $3.5 million for plaintiff's interests in the four Energy Group companies. Plaintiff alleged claims of conversion against the Francis defendants and the Energy Group companies based on their alleged wrongful exercise of dominion over $2,691,738 in net rental income that allegedly belonged to him. Plaintiff also alleged that the January 28, 2011, agreement was breached because the assets of the Energy Group companies were not disclosed to Kimberly.

In April 2013, defendants responded to the complaint by moving for summary disposition on various grounds, including the January 28, 2011, release executed by Kimberly, and seeking sanctions under MCR 2.114(E) and MCL 600.2591. In a response to this motion, plaintiff claimed that all of the defendants, possibly in concert with others, had engaged in a fraudulent scheme to steal at least $2,145,418 that should have been distributed to him. To support his claim, plaintiff relied on a federal tax form for the year ending December 31, 2011, which used a distribution of $2,145,418, to reduce his ending capital account in EGE to zero. At a hearing on defendants' motion, plaintiff's counsel indicated that plaintiff was not challenging the sale of his interest in the business entities but that he wanted the distribution indicated on the tax form. Plaintiff requested an opportunity to amend the complaint if summary disposition was granted under MCR 2.116(C)(8). The trial court granted defendants' motion pursuant to MCR 2.116(C)(7). The court ruled that the entire complaint was barred by the release executed by Kimberly pursuant to the power of attorney and plaintiff's failure to tender back the consideration received for the release.

## II. PLAINTIFF'S APPEAL

Plaintiff argues that the trial court erred in ruling that the release and the tender back doctrine applied to his claim predicated on the EGE distribution of $2,145,418 reflected in the federal tax form for the year ending December 31, 2011. Plaintiff argues that the release does not apply to this claim because he was entitled to the distribution under the terms of EGE's operating agreement. Plaintiff also argues that there is nothing he could tender back because no consideration was specifically recited in the agreement for the release.

We review de novo a trial court's decision regarding a motion for summary disposition. *Titan Ins Co v Hyten*, 491 Mich 547, 553; 817 NW2d 562 (2012). Summary disposition may be granted under MCR 2.116(C)(7) where "[e]ntry of judgment, dismissal of the action, or other relief is appropriate because of release . . . ." In reviewing such a motion, a court accepts the contents of the complaint as true unless contradicted by affidavits, depositions, admissions, or other documentary evidence submitted by the moving party. *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). The evidence is only considered to the extent that the content or substance would be admissible as evidence. MCR 2.116(G)(6). "If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of the facts, the question whether the claim is barred is an issue of law for the court." *Dextrom v Wexford Co*, 287 Mich App 406, 431; 789 NW2d 211 (2010). Principles of contract law govern the interpretation of a release. *Mich Head & Spine Institute, PC v State Farm Mut Auto Ins Co*, 299 Mich App 442, 448; 830

NW2d 781 (2013). The proper interpretation of a contract is reviewed de novo as a question of law. *Titan Ins Co*, 491 Mich at 553.

Defendants accurately assert that plaintiff's claim predicated on the $2,145,418 reflected as an EGE distribution in the federal tax form for the year ending December 31, 2011, was not pleaded in plaintiff's complaint. Even assuming that net rental income for EGE in one year may be used by EGE to make a distribution to a member in the next year, we do not agree with plaintiff's position that his pleaded claim of entitlement to net rental income of $2,691,738 for the tax year ending December 31, 2010, is adequate to plead the other claim. Because plaintiff changed the factual basis of the complaint without having moved to amend the complaint, we conclude that plaintiff failed to properly present his claim to the trial court. This is especially so considering that summary disposition was granted under MCR 2.116(C)(7). MCR 2.116(I)(5) did not require the court to sua sponte offer plaintiff an opportunity to amend the complaint. *Kloian v Schwartz*, 272 Mich App 232, 242; 725 NW2d 671 (2006). MCR 2.116(I)(5) provides only that "[i]f the grounds asserted are based on subrule (C)(8), (9), or (10), the court shall give the parties an opportunity to amend their pleadings as provided by MCR 2.118, unless the evidence then before the court shows that amendment would not be justified." While it may be appropriate to allow a party to amend a complaint to add a new theory or claim pursuant to MCR 2.116(I)(5), *Yudashkin v Linzmeyer*, 247 Mich App 642, 651; 637 NW2d 257 (2001), MCR 2.116(I)(5) does not apply to a motion under MCR 2.116(C)(7).

Because plaintiff did not attempt to amend his complaint under MCR 2.118(A), his unpleaded claim predicated on the $2,145,418 reflected as an EGE distribution in the federal tax form for the year ending December 31, 2011, is not properly before us. We note that plaintiff does not raise any issue on appeal regarding whether he should be allowed to amend his complaint. In addition, considering the trial court's ruling that the complaint was barred by the release, we find no support for plaintiff's argument that the trial court considered the unpleaded claim when granting defendants' motion pursuant to MCR 2.116(C)(7). Nonetheless, this Court has discretion to consider any issue that, in this Court's opinion, justice requires be considered and resolved. *LME v ARS*, 261 Mich App 273, 287; 680 NW2d 902 (2004). We may also consider any issue that was presented to but not decided by the trial court, where the record contains the necessary facts. *Hines v Volkswagon of America, Inc,* 265 Mich App 432, 443-444; 695 NW2d 84(2005). In this case, even if plaintiff had properly pleaded a claim predicated on the $2,145,418 EGE distribution for the year ending December 31, 2011, it would not provide any basis for disturbing the trial court's summary disposition ruling.

Plaintiff relies on the EGE operating agreement in support of his unpleaded claim that he was entitled to a distribution from EGE. A court construes a contract by reading it as a whole, "giving harmonious effect, if possible, to each word and phrase." *Royal Prop Group, LLC v Prime Ins Syndicate, Inc*, 267 Mich App 708, 719; 706 NW2d 426 (2005). A court may consult a dictionary to determine the plain and ordinary meaning of undefined terms in a contract. *Holland v Trinity Health Care Corp*, 287 Mich App 524, 527-528; 791 NW2d 724 (2010). If the contract is ambiguous and summary disposition depends on the meaning of the contract, summary disposition is inappropriate because factual development is necessary to determine the contracting parties' intent. See *SSC Assoc Ltd Partnership v Gen Retirement Sys*, 192 Mich App 360, 363; 480 NW2d 275 (1991). A contract is ambiguous where a term is equally susceptible to

more than one meaning or two provisions irreconcilably conflict. *Coates v Bastian Bros, Inc*, 276 Mich App 498, 503; 741 NW2d 539 (2007).

On its face, the operating agreement indicates that EGE was organized under the Limited Liability Company Act (LLCA), MCL 450.4101 *et seq.* A limited liability company under the LLCA is an unincorporated membership organization. MCL 450.4102(2)(k). "A member has no interest in specific limited liability company property." MCL 450.4504(2). A limited liability company is generally considered a hybrid business entity "offering all of its members limited liability as if they were shareholders of a corporation but treating the entity and its members as a partnership for tax purposes." 51 Am Jur 2d, Limited Liability Companies, § 1.

Under the LLCA, an "operating agreement" generally means "a written agreement . . . between all of the members of a limited liability company that has more than 1 member, pertaining to the affairs of the limited liability company and the conduct of its business. The term includes any provision in the articles of organization pertaining to the affairs of the limited liability company and the conduct of its business." MCL 450.4102(2)(r). Here, plaintiff has not supported his claim that the EGE operating agreement requires that its profits be distributed to members. Paragraph 4.2 provides that "[t]he Company *may* make distributions to the Members from time to time" (emphasis added). Courts generally give the word "may" its ordinary and accepted meaning as a permissive term. See *Murphy v Sears, Roebuck & Co*, 190 Mich App 384, 386-387; 476 NW2d 639 (1991). Although this provision also provides that "[t]he Members shall endeavor to make distributions in cash to the Members at times and in amounts that enable the Members to pay the tax due on the income of the Company before its due date," the term "endeavor" is defined in relevant part as "to attempt earnestly; try." *Random House Webster College's Dictionary* (1997). Therefore, while the word "shall" generally denotes mandatory action, *Murphy*, 190 Mich App at 386-387, the phrase "shall endeavor" is properly construed as mandating an earnest attempt to make a distribution at an appropriate time and in an appropriate amount to pay taxes. It does not entitle a member to a distribution. Therefore, we reject plaintiff's argument that the operating agreement requires distributions.

Further, plaintiff has failed to establish support for his position that his claim would not be subject to the release. In considering this issue, we find it unnecessary to apply the terms of the release that would have been required upon closing under the option set forth in the June 1, 2010, agreement. An option is an enforceable promise not to revoke an offer for a specific period. *In re Egbert R Smith Trust*, 480 Mich 19, 25; 745 NW2d 754 (2008). An option to purchase may ripen into a binding bilateral contract if the optionee accepts the offer in strict compliance with the terms of the option. *Le Baron Homes, Inc v Pontiac Housing Fund, Inc*, 319 Mich 310, 315; 29 NW2d 704 (1947). In addition, with respect to contracts generally, parties are free to modify terms of existing contracts or to enter into new contracts. *Quality Prods & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 370-371; 666 NW2d 251 (2003). Because Kimberly and the Francis defendants entered into a new contract with additional parties on January 28, 2011, rather than simply performing any obligations under a ripened binding contract as a result of the Francis defendants' alleged acceptance of the option in the June 1, 2010 agreement, it is necessary to look to the January 28, 2011, agreement and the actual release provided by Kimberly as part of that agreement to determine whether plaintiff's unpleaded claim of entitlement to a distribution of $2,145,418 is covered by the release.

-5-

Plaintiff has failed to establish that the release language in the signed version of the January 28, 2011, agreement does not apply to his unpleaded claim. Kimberly provided the following release in the signed version of the January 28, 2011, agreement:

> Runco releases the Energy Group Companies, Capital Waste, Inc. and Francis from any and all claims, liabilities, and demands of any kind and nature, whether known or unknown, related in any way to his association with the Energy Group Companies, Capital Waste, Inc,, [sic] and the companies associated with the Capital Waste, Inc, *sale*, including but not limited to any aspect of operations, disclosures, fiduciary duties, contracts, distributions, return of capital, draws, repayment of loans, compensation or claims whatsoever of any kind whether sounding in statute, tort, contract, law or equity in any way related to The Energy Group Companies, Capital Waste, Inc. and specifically includes any issues with respect to the distribution of funds in connection with the sale of Capital Waste. [Emphasis added.]

We reject plaintiff's newly raised argument that the use of the word "sale" in the release means that the claim, liability, or demand must be connected to the sale of the Energy Group companies. Plaintiff's argument is flawed because it fails to consider the recital regarding the prior sale of Capital Waste, Inc., that took place as part of a transaction involving a number of companies:

> On June 1, 2010, the [sic] John Runco and Francis executed agreements selling their respective interests in Capital Waste, Inc., Detroit Energy Recycling, LLC, Capital Express, LLC, and Capital Waste Equipment, LLC, and related interests (collectively referred to as "Capital Waste") to Waste Management of Michigan, Inc.

Examined in the context of this recital, it is reasonable to construe the phrase "the Capital Waste, Inc," as modifying the word "sale." It does not follow that "the Energy Group Companies" also modifies "sale." Rather, it is apparent that the release uses "the Capital Waste, Inc, sale" as part of the description of certain companies. It is part of the phrase "the companies associated with the Capital Waste, Inc, sale." The conjunctive word "and" generally denotes a joinder or union of terms. *Mayer v Credit Life Ins Co*, 42 Mich App 648, 651; 202 NW2d 521 (1972). As a whole, the term "and" is used to identify the entities that plaintiff must be associated with for the release to apply. It would defy common sense to construe the release as being applicable to plaintiff's association with the sale of each entity, especially when one considers the types of claims, liabilities, and demands "of any kind and nature" that are identified in the release through the phrase, "including but not limited to any aspect of operations, disclosures, fiduciary duties, contracts, distributions, return of capital, draws, repayment of loans, compensation or claims whatsoever of any kind whether sounding in statute, tort, contract, law or equity in any way related to The Energy Group Companies . . . ." These terms encompass plaintiff's association with the Energy Group companies, not his association with the sales transaction.

We disagree with plaintiff's argument that he could nonetheless establish a latent ambiguity surrounding the term "distributions." Although the use of broad encompassing language, such as "all," does not preclude a party from demonstrating a latent ambiguity,

extrinsic evidence must support an argument that the contract language, under the circumstances of its formation, is susceptible to more than one interpretation. See *Shay v Aldrich*, 487 Mich 648, 661-670; 790 NW2d 629 (2010). In this case, we have already rejected plaintiff's argument that the operating agreement mandates distributions, and even assuming that a distribution was declared before January 28, 2011, it clearly would relate to plaintiff's association with the Energy Group companies and, in particular, EGE. Had there been an intent to reserve distributions chargeable to plaintiff's capital account, it could have been addressed in Kimberly's agreement to assign plaintiff's membership interest, including any funds in his capital account, to EGE. Because it was not and we find no extrinsic evidence to establish a latent ambiguity, we reject plaintiff's newly raised claim of ambiguity. In sum, the release unambiguously applies to plaintiff's unpleaded claim because it relates to his association with the Energy Group companies.

Having concluded that the release applies to the unpleaded claim, we turn to plaintiff's argument that the claim is not subject to the tender back doctrine. Generally, a plaintiff must tender back consideration received in exchange for a release either before or simultaneously with the filing of a lawsuit that contravenes the release. *Stefanac v Cranbrook Ed Community (After Remand)*, 435 Mich 155, 176-177; 458 NW2d 56 (1990); *Rinke*, 226 Mich App at 436. The purpose of this rule is to preserve the stability of release agreements, which are intended to avoid litigation. *Stefanac*, 435 Mich at 177. The rule precludes a party from retaining the benefit of an agreement while at the same time bringing suit in contravention of the agreement. *Id*.

The tender back doctrine does not apply where the release for which consideration was given does not apply to the plaintiff's claims. *Rinke*, 226 Mich App at 439, citing *Taylor Group v ANR Storage Co*, 452 Mich 561, 565-567; 550 NW2d 258 (1996). Where the release applies to the claims, the only exceptions to the tender back doctrine are "waiver of the plaintiff's duty by the defendant and fraud in the execution." *Stefanac*, 435 Mich at 165. "Fraud in the execution" occurs where a proponent of an instrument tells the signatory thereof that the instrument does not really mean what it clearly says, and the signatory relies on this fraud to his or her detriment. *Paul v Rotman*, 50 Mich App 459, 463-464; 213 NW2d 588 (1973). Stated otherwise, it occurs when the signatory is led to believe that he or she is signing something other than a release. *Stefanac*, 435 Mich at 166.

We note, initially, that plaintiff has failed to establish that the release applicable to his claim was not supported by consideration. Although the January 28, 2011, agreement does not recite specific consideration for the release, it was part of a larger contract supported by consideration of $3.5 million. "'Where there is no specific recitation of separate consideration for the release, but it is part of a larger contract involving multiple promises, the basic rule of contract law is that whatever consideration is paid for all of the promises is consideration for each one . . . .'" *Hall v Small,* 267 Mich App 330, 334; 705 NW2d 741 (2005), quoting *Rowady v K Mart Corp,* 170 Mich App 54, 59; 428 NW2d 22 (1988).

Plaintiff has also failed to establish that the exceptions for waiver or fraud in the execution apply. To the extent that plaintiff suggests that he could avoid the tender back doctrine by pursuing a claim that Kimberly signed the release in reliance on a material misrepresentation with respect to distributions, there is no merit to this argument because plaintiff's claim does not involve fraud in the execution.

-7-

To the extent that plaintiff suggests that he could avoid the tender back doctrine by challenging the release on the ground that it is unconscionable, this issue is unpreserved because it was not presented to or decided by the trial court. *Hines*, 265 Mich App at 443. We do not agree with plaintiff's position that the "general tone" of his counsel's argument was sufficient to raise this issue. "Trial courts are not the research assistants of litigants; the parties have a duty to fully present their legal arguments to the court for its resolution of their dispute." *Walters v Nadell*, 481 Mich 377, 388; 751 NW2d 431 (2008). In any event, while a contract or contract provision may be unenforceable if is unconscionable, *Clark v DaimlerChrysler Corp*, 268 Mich App 138, 143-144; 706 NW2d 471 (2005), because the gravamen of plaintiff's unpleaded claim concerning distributions is contrary to the release, plaintiff's unconscionability theory does not relieve him of the obligation to tender the recited consideration before seeking to repudiate the release. *Stefanac*, 435 Mich at 164-165.

To the extent that plaintiff suggests that he could avoid the tender back doctrine by challenging the court's action in the divorce case that resulted in Kimberly acquiring the power of attorney, this issue is also unpreserved because it was neither presented to nor decided by the trial court. *Hines*, 265 Mich App at 443. Although plaintiff's counsel asserted at the hearing on defendants' motion that plaintiff was forced to sign the power of attorney by the judge in the divorce action, counsel also conceded that "that has nothing to do with this particular case."

In any event, a circuit court is empowered to enforce its decrees and effectuate its judgment in a divorce action. MCL 552.12; MCL 600.611; *Draggoo v Draggoo*, 223 Mich App 415, 428; 566 NW2d 642 (1997); *Wiand v Wiand*, 178 Mich App 137, 143-144; 443 NW2d 464 (1989). Plaintiff has not established any basis for collaterally attacking the enforcement action taken in his divorce case. *Jackson City Bank & Trust Co v Fredrick*, 271 Mich 538, 544-545; 260 NW 908 (1935). In addition, any challenge to Kimberly's capacity to execute the release would also be subject to the tender back doctrine. See *McDonald v Zinn Drywall*, 134 Mich App 270, 274-275; 350 NW2d 864 (1984).

Considering plaintiff' arguments as a whole, we conclude that the trial court reached the right result in granting defendants' motion for summary disposition under MCR 2.116(C)(7) based on the release and the tender back doctrine, even considering plaintiff's unpleaded claim predicated on the $2,145,418 distribution for the year ending December 31, 2011.

Plaintiff also frames this unpleaded claim as one that he should be allowed to pursue under a theory of constructive trust, which is an equitable remedy. *Union Guardian Trust Co v Emery*, 292 Mich 394, 406-407; 290 NW 841 (1940). A court may impose a constructive trust upon traceable proceeds of converted property where it appears just and equitable to do so. *Detroit Trust Co v Struggles*, 283 Mich 471, 474-475; 278 NW 385 (1938); see also *Michigan Nat'l Bank v American Express Co*, 307 Mich 245, 256-257; 11 NW2d 875 (1943). Plaintiff's "constructive trust" theory is flawed because a member of a limited liability company has no interest in specific property. MCL 450.4504(2). In addition, we have already rejected plaintiff's argument that his unpleaded claim for $2,145,418 is not subject to the release. Because the "constructive trust" remedy proposed by plaintiff would also be covered by the release in the January 28, 2011 agreement, it too is subject to the tender back doctrine. Accordingly, we find no basis for relief.

Lastly, given plaintiff's failure to move for sanctions against defendants under MCR 2.114(E) in the trial court, we decline to consider plaintiff's argument that defendants should be sanctioned for including the wrong version of the January 28, 2011, agreement in their motion for summary disposition. *Hines*, 265 Mich App at 443.

## III. DEFENDANTS' CROSS-APPEAL

Defendants argue in their cross-appeal that the trial court erred by failing to award them sanctions under MCR 2.114(E) and MCL 600.2591. The record establishes that defendants repeatedly presented this issue to the trial court, but the trial court declined to decide the issue. We disagree with plaintiff's argument that this omission deprives this Court of jurisdiction to consider the issue on cross-appeal. "The jurisdiction of the Court of Appeals is provided by law, and its practices and procedures are prescribed by the court rules and our Supreme Court." *Costa v Community Emergency Med Servs, Inc*, 263 Mich App 572, 581; 689 NW2d 712 (2004), aff'd in part on other grounds 475 Mich 403 (2006). MCR 7.207 governs cross-appeals. This rule does not restrict a cross-appellant from challenging a trial court's rulings or other perceived improprieties that are not contained in the order appealed by the initial appellant. *Costa*, 263 Mich App at 584. In this case, the claimed impropriety is the trial court's failure to rule on an issue that was raised in defendants' motion. The trial court's omission does not affect this Court's jurisdiction. Rather, this Court retains authority to consider issues that were properly raised below but not decided by the trial court. *Peterman v Dep't of Natural Resources*, 446 Mich 177, 183; 521 NW2d 499 (1994); *Hines*, 265 Mich App at 443-444. Because defendants repeatedly requested sanctions against plaintiff under MCL 600.2591 and MCR 2.114(E), it is appropriate to consider this issue.

MCL 600.2591 mandates an award of costs and attorney fees to a prevailing party if a civil action is found to be frivolous. *Holton v Ward*, 303 Mich App 718, 734; 847 NW2d 1 (2014). A "prevailing party" is defined as "a party who wins on the entire record." MCL 600.2591(3)(b). The appropriate time for a party to seek sanctions under this statute is within a reasonable time after the prevailing party is determined. *Avery v Demetropoulos*, 209 Mich App 500, 503; 531 NW2d 720 (1994). Because the prevailing party in this case was not determined until after the trial court made its summary disposition ruling, defendants' request for sanctions under MCL 600.2591 was premature. However, considering the trial court's resolution of the motion for summary disposition, a remand to the trial court to address the request for sanctions is appropriate; the trial court may entertain a renewed motion for costs and fees before deciding if sanctions are mandated under MCL 600.2591. Cf. *Check Reporting Servs, Inc v Mich Nat'l Bank-Lansing,* 191 Mich App 614, 629; 478 NW2d 893 (1991) (remanding for the trial court to state its reasons for denying a request for costs or to entertain a renewed motion for costs).

MCR 2.114(E) differs from MCL 600.2591 because it does not mandate any particular sanction where a document is signed in violation of MCR 2.114(D). Rather, a court has discretion to fashion an appropriate sanction. *FMB-First Nat'l Bank v Bailey*, 232 Mich App 711, 726-727; 591 NW2d 676 (1998). In addition, MCR 2.114(E) does not require that the party seeking sanctions be the prevailing party in the lawsuit. To be timely, the party should move for sanctions before the case is dismissed, *Antonow v Marshall*, 171 Mich App 716, 719; 430 NW2d 768 (1988), but this does not preclude a court from determining the motion at a later date, see *Maryland Cas Co v Allen*, 221 Mich App 26, 29-32; 561 NW2d 103 (1997). The document

underlying defendants' request for sanctions under MCR 2.114(E) is plaintiff's complaint. Because defendants timely requested sanctions under MCR 2.114(E) and the trial court failed to decide the motion, we remand for a decision on the motion.

Affirmed in part and remanded for further proceedings regarding defendants' request for sanctions under MCR 2.114(E) and MCL 600.2591. We do not retain jurisdiction.


/s/ Mark J. Cavanagh
/s/ Patrick M. Meter
/s/ Douglas B. Shapiro