# STATE OF MICHIGAN

# COURT OF APPEALS

SATURN ELECTRONICS CORPORATION,

    Plaintiff/Counterdefendant-
    Appellant,

v

ISHVAR SUTARIYA and PRAVIN SUTARIYA,

    Defendants/Counterplaintiffs-
    Appellees.

UNPUBLISHED
June 21, 2018

No. 335912
Wayne Circuit Court
LC No. 14-012535-CB

Before: SAWYER, P.J., and CAVANAGH and FORT HOOD, JJ.

PER CURIAM.

Plaintiff appeals as of right the stipulated order and judgment entered in favor of defendants, Ishvar Sutariya and Pravin Sutariya, in the amount of $295,000 for attorney fees, costs, and expenses awarded pursuant to the parties' "Stock Purchase Redemption Agreement" (the "Agreement"). The judgment was entered after the trial court ruled on the parties' cross motions for summary disposition. We affirm in part, reverse in part, and vacate the stipulated judgment and order.

This case arises from allegations that defendants, who were officers, directors, shareholders, and employees of plaintiff, sold scrap metal belonging to plaintiff for cash and converted the cash for their own use. Plaintiff claims that defendants entered into the Agreement without disclosing the scrap sales and that defendants subsequently interfered with plaintiff's business. The trial court ruled that (1) plaintiff's pre-redemption claims were barred by a release contained in the Agreement, (2) an indemnification provision of the Agreement required plaintiff to indemnify defendants for their attorney fees incurred in the action, and (3) plaintiff failed to establish a genuine issue of material fact regarding causation with regard to its claims alleging interference.

## I. RELEASE

Plaintiff first argues that the trial court erred by ruling that the release barred its claims in Counts I through IV of its second amended complaint. Plaintiff argues that (1) the release was invalid based on defendants' failure to disclose the scrap theft in violation of their fiduciary duties, (2) it was not obligated to tender back the consideration it received because the release

-1-

was not binding, and (3) the release is ambiguous and extrinsic evidence demonstrates that the parties did not intend the release to apply to defendants' wrongful acts. We disagree that summary disposition was improperly granted.

"Generally, an issue is not properly preserved if it is not raised before, and addressed and decided by, the trial court." *Hines v Volkswagen of America, Inc*, 265 Mich App 432, 443; 695 NW2d 84 (2005). With regard to plaintiff's claim that the release was invalid because of defendants' breach of their fiduciary duty to disclose, this issue was not raised, addressed, or decided below. Therefore, it is unpreserved. With regard to plaintiff's claim that it was not required to tender back the consideration received for the release, this argument also was not raised, addressed, or decided below. Therefore, it also is unpreserved. "[T]his Court need not review issues raised for the first time on appeal[.]" *Smith v Foerster-Bolser Constr, Inc*, 269 Mich App 424, 427; 711 NW2d 421 (2006). However, "this Court may overlook preservation requirements if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented." *Id*. Because plaintiff's unpreserved claims involve questions of law and the facts necessary for their resolution have been presented, we may consider those issues. Finally, with regard to plaintiff's claim that the release was ambiguous, this issue is preserved because it was raised below and it was addressed and decided by the trial court.

The trial court granted summary disposition on Counts I through IV pursuant to MCR 2.116(C)(7), which applies when "[e]ntry of judgment, dismissal of the action, or other relief is appropriate because of release." This Court reviews de novo a grant of summary disposition under MCR 2.116(C)(7). *Novak v Nationwide Mut Ins Co*, 235 Mich App 675, 681; 599 NW2d 546 (1999). This Court "consider[s] all documentary evidence submitted by the parties and accept[s] the plaintiff's well-pleaded allegations, except those contradicted by documentary evidence, as true." *Id*. This Court also reviews "de novo questions regarding the proper interpretation of a contract and whether the language of a contract is ambiguous." *Genesee Foods Servs, Inc v Meadowbrook, Inc*, 279 Mich App 649, 654; 760 NW2d 259 (2008).

In *Wyrembelski v St Clair Shores*, 218 Mich App 125, 127; 553 NW2d 651 (1996), this Court stated:

The law relating to summary disposition on the basis of a release can be summarized as follows:

Summary disposition of a plaintiff's complaint is proper where there exists a valid release of liability between the parties. A release of liability is valid if it is fairly and knowingly made. The scope of a release is governed by the intent of the parties as it is expressed in the release.

If the text in the release is unambiguous, we must ascertain the parties' intentions from the plain, ordinary meaning of the language of the release. The fact that the parties dispute the meaning of a release does not, in itself, establish an ambiguity. A

-2-

contract is ambiguous only if its language is reasonably susceptible to more than one interpretation. If the terms of the release are unambiguous, contradictory inferences become "subjective, and irrelevant", and the legal effect of the language is a question of law to be resolved summarily. [Citations omitted.]

Further, in *Xu v Gay*, 257 Mich App 263, 272-273; 668 NW2d 166 (2003), this Court explained:

A release is knowingly made even if it is not labeled a "release," or the releasor fails to read its terms, or thought the terms were different, absent fraud or intentional misrepresentation designed to induce the releasor to sign the release through a strategy of trickery. A release is not fairly made if "(1) the releasor was dazed, in shock, or under the influence of drugs, (2) the nature of the instrument was misrepresented, or (3) there was other fraudulent or overreaching conduct." [Citations omitted.]

In *Stefanac v Cranbrook Ed Community*, 435 Mich 155, 164-165; 458 NW2d 56 (1990), the Michigan Supreme Court stated:

We start with the presumption that the plaintiff executed the release knowingly and that the recited consideration was received. The plaintiff has the burden of showing, by a preponderance of the evidence, that the release is unfair or incorrect on its face. Even in light of these presumptions and the plaintiff's burden, the plaintiff must tender the recited consideration before there is a right to repudiate the release. The only recognized exceptions in Michigan are a waiver of the plaintiff's duty by the defendant and fraud in the execution. [Citations omitted.]

## A. VALIDITY OF THE RELEASE

Plaintiff argues that the release was invalid because defendants failed to disclose their scrap sales, which violated their fiduciary duty to disclose. Initially, we agree with defendants that plaintiff waived any claim that the release was invalid. "[A] [w]aiver is the intentional relinquishment of a known right that may be shown by express declarations or by declarations that manifest the parties' intent and purpose." *Reed Estate v Reed*, 293 Mich App 168, 176; 810 NW2d 284 (2011) (citation and quotation marks omitted; second alteration in original). Not only did plaintiff fail to raise this issue below, in its brief opposing defendants' motion for summary disposition, it expressly stated that "it was not seeking to have the Release set aside." Thus, plaintiff intentionally relinquished any claim that the release should be set aside as invalid.

Even if plaintiff's challenge to the validity of the release was not waived, we would nonetheless conclude that dismissal of plaintiff's claims was proper based on the tender-back rule, which, as indicated earlier, requires that a plaintiff tender back recited consideration before there is a right to repudiate a release. *Stefanac*, 435 Mich at 165. Plaintiff has not alleged either exception to the rule. See *id*. There is no claim that defendants waived plaintiff's duty to tender back, nor has plaintiff alleged that it did not know that it was signing a release. See *id*.; *Collucci v Eklund*, 240 Mich App 654, 659; 613 NW2d 402 (2000).

-3-

We disagree with plaintiff's contention that tender back is not required if it can establish that the release is invalid. Plaintiff relies on *Taylor Group v ANR Storage Co*, 452 Mich 561, 566; 550 NW2d 258 (1996), in which the Michigan Supreme Court concluded that the tender-back rule was inapplicable because the parties "did not execute a binding release." The Court concluded that the parties simply executed a contract, but did not compromise liability. *Id*. The Court concluded that "the nominal release was not in fact a release of all liability arising from the original transaction," but "at most, an acknowledgement that ANR had fulfilled its contractual obligation to make the contingent payment." *Id*. at 566-567. By contrast, there is no dispute in this case that the Agreement contains a release of liability. Similarly, in *Rott v Goldman*, 236 Mich 261; 210 NW 335 (1926), there was no contract to rescind because it was void based on violation of a statute. In this case, however, plaintiff merely claims that the release was invalid because of fraud. "A plaintiff may challenge a release on the basis of fraud, but not until he has tendered the consideration he received in exchange for the release." *Collucci*, 240 Mich App at 659. See also *Rinke v Auto Moulding Co*, 226 Mich App 432, 436-438; 573 NW2d 344 (1997) (applying the tender-back rule to claims of breach of fiduciary duty and fraud).

In its reply brief, plaintiff raises a new argument that the consideration it received (defendants' stock) was in exchange for the payment of cash, and there was no separate consideration for the release; therefore, tender back was not required. However, as in *Leahan v Stroh Brewery Co*, 420 Mich 108, 113; 359 NW2d 524 (1984), the consideration received as part of the Agreement supported the release. Therefore, tender back was required.

## B. WHETHER THE RELEASE WAS AMBIGUOUS

Plaintiff also challenges the trial court's ruling that the release was unambiguous. The trial court found that the broad language of the release clearly applied to defendants' conduct. The release provides that defendants are released

> from *any and all past and present claims*, demands, obligations, suits, damages, liabilities, actions, or causes of action, at law or in equity, *known or unknown*, whether arising by statute, law or otherwise, *of any kind or nature whatsoever*, that Corporation may have and which in any manner relate to (i) the direct or indirect ownership of shares of the Corporation, (ii) any other matter of any nature whatsoever related to the Corporation. [Emphasis added.]

Plaintiff claims that the release is latently ambiguous with regard to whether it was intended to cover defendants' wrongful acts.

> A latent ambiguity exists when the language in a contract appears to be clear and intelligible and suggests a single meaning, but other facts create the necessity for interpretation or a choice among two or more possible meanings. To verify the existence of a latent ambiguity, a court must examine the extrinsic evidence presented and determine if in fact that evidence supports an argument that the contract language at issue, under the circumstances of its formation, is susceptible to more than one interpretation. Then, if a latent ambiguity is found to exist, a court must examine the extrinsic evidence again to ascertain the meaning

-4-

of the contract language at issue. [*Shay v Aldrich*, 487 Mich 648, 668; 790 NW2d 629 (2010) (citations and quotation marks omitted).]

Plaintiff relies on the deposition testimony of Rajan Sutaryia, who stated that the release was not intended to cover theft, as well as the Agreement as a whole, to argue that a latent ambiguity exists. This evidence, however, is insufficient to establish the existence of a latent ambiguity. Unlike in *Shay*, the extrinsic evidence is not undisputed, and the release must be strictly construed against plaintiff, the party that drafted it. *Shay*, 487 Mich at 672-673. The release clearly applies to "any and all past and present claims . . . known or unknown, . . . of any kind or nature whatsoever," and that related to "any other matter of any nature whatsoever related to the Corporation." As defendants observe, "Parol evidence under the guise of a claimed latent ambiguity is not permissible to vary, add to, or contradict the plainly expressed terms of this writing, or to substitute a different contract for it, to show an intention or purpose not therein expressed." *Mich Chandelier Co v Morse*, 297 Mich 41, 48; 297 NW 64 (1941) (citation and quotation marks omitted). Thus, the trial court did not err by concluding that the broad language of the release unambiguously applied to plaintiff's claims against defendants. Accordingly, the trial court properly granted summary disposition in favor of defendants on Counts I through IV.

## II. INDEMNIFICATION

Plaintiff next argues that the trial court erred by requiring it to indemnify defendants and pay their attorney fees because (1) the indemnification provision did not expressly provide for attorney fees, and (2) defendants could not be indemnified for their own illegal and intentional conduct. We agree.

The trial court granted summary disposition on defendants' indemnification claim pursuant to MCR 2.116(C)(10).

This Court reviews decisions on motions for summary disposition de novo to determine if the moving party was entitled to judgment as a matter of law. A motion for summary disposition pursuant to MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the party opposing the motion. Summary disposition under MCR 2.116(C)(10) is proper when there is no genuine issue regarding any material fact. [*Stock Bldg Supply, LLC v Crosswinds Communities, Inc*, 317 Mich App 189, 198; 893 NW2d 165 (2016) (citations and quotation marks omitted).]

### A. LANGUAGE OF THE INDEMNIFICATION PROVISION

Plaintiff first argues that the indemnification provision does not require it to indemnify defendants for their attorney fees. In *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 174; 848 NW2d 95 (2014), our Supreme Court stated:

As with any other contract, our primary task in construing a contract for indemnification is to give effect to the parties' intention at the time they entered

into the contract. We determine the parties' intent by examining the language of the contract according to its plain and ordinary meaning. In doing so, we avoid an interpretation that would render any portion of the contract nugatory. We assess the threshold question whether a contract's indemnity clause applies to a set of facts by a straightforward analysis of the facts and the contract terms.

Where parties have expressly contracted for indemnification, the extent of the duty must be determined from the language of the contract. . . . [Citations and quotation marks omitted.]

The indemnification provision provides:

**9.2 Indemnification and Hold Harmless.** Corporation shall indemnify and hold Seller Equityholder harmless from any claims or liabilities brought againsts [sic] Seller Equityholder relating to Seller Equityholder's direct or indirect ownership of share in the corporation or any other mater [sic] of any nature whatsoever related to the corporation.

In *Beaudin v Mich Bell Tel Co*, 157 Mich App 185, 189; 403 NW2d 76 (1986), this Court concluded that the language "all other claims" did not expressly allow indemnification for attorney fees, costs, or other expenses. This Court compared *Redfern v RE Dailey & Co*, 146 Mich App 8, 19; 379 NW2d 451 (1985), in which this Court held that attorney fees were covered by an indemnity agreement that included "all claims, liabilities, losses, damages *and expenses of every character whatsoever*." In *Hayes v Gen Motor Corp*, 106 Mich App 188, 201-202; 308 NW2d 452 (1981), this Court upheld an award of attorney fees where the indemnification provision provided that the "Contractor shall indemnify, hold harmless *and defend* the Owner."

Although an express reference to attorney fees is not required, we conclude that the language of the indemnification provision in this case is similar to the provision in *Beaudin* because it merely refers to "any claims or liabilities." Although there is broad language referring to "any nature whatsoever," the indemnification provision in this case does not expressly refer to expenses as in *Redfern*, or a duty to defend as in *Hayes*. Accordingly, the trial court erred by holding that the language requiring plaintiff to indemnify defendants for "any claims of liabilities" brought against defendants also required plaintiff to indemnify defendants for their attorney fees incurred in defending against any claims. The trial court improperly granted summary disposition in favor of defendants on their counterclaim for indemnification.

## B. INDEMNIFICATION FOR ILLEGAL AND INTENTIONAL CONDUCT

In an argument raised for the first time on appeal, plaintiff also argues that defendants could not be indemnified for their illegal and intentional conduct. Because the scope of the indemnification agreement does not apply to attorney fees, we need not decide this issue.

## III. CAUSATION

Finally, plaintiff argues that the trial court erred by dismissing Counts V and VI of its second amended complaint against Pravin pursuant to MCR 2.116(C)(10), on the ground that

there was no genuine issue of material fact regarding whether Pravin's alleged breach injured plaintiff. See *Stock Bldg Supply, LLC*, 317 Mich App at 198.

The trial court found that plaintiff failed to establish causation and dismissed plaintiff's claims in Counts V and VI with regard to Acuity Brands, Inc. Count V alleged breach of the Agreement and Count VI alleged tortious interference with a business relationship or expectancy. Both of these claims require proof of causation. See *Miller*, 495 Mich at 178 (stating the elements of breach of contract); *PT Today, Inc v Comm'r of the Office of Fin & Ins Servs*, 270 Mich App 110, 148; 715 NW2d 398 (2006) (stating the element of tortious interference with a business relationship). In *Skinner v Square D Co*, 445 Mich 153, 164; 516 NW2d 475 (1994), overruled in part on other grounds *Smith v Globe Life Ins Co*, 460 Mich 446, 455 n 2; 597 NW2d 28 (1999), our Supreme Court stated:

> To be adequate, a plaintiff's circumstantial proof must facilitate reasonable inferences of causation, not mere speculation. In *Kaminski v Grand Trunk W R Co*, 347 Mich 417, 422; 79 NW2d 899 (1956), this Court highlighted the basic legal distinction between a reasonable inference and impermissible conjecture with regard to causal proof:
>
> > As a theory of causation, a conjecture is simply an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference. There may be 2 or more plausible explanations as to how an event happened or what produced it; yet, if the evidence is without selective application to any 1 of them, they remain conjectures only. On the other hand, if there is evidence which points to any 1 theory of causation, indicating a logical sequence of cause and effect, then there is a juridical basis for such a determination, notwithstanding the existence of other plausible theories with or without support in the evidence.

Plaintiff alleged that Pravin contacted several customers, disclosed misleading and incorrect information, and intentionally interfered with plaintiff's business. With regard to the element of causation, plaintiff presented evidence that, after Pravin's alleged solicitation in 2015, plaintiff's sales to Acuity dropped in 2016. Defendants presented the testimony of Jeffrey Woolwine from Acuity, who stated that plaintiff was placed on restricted status in 2015 because of "[q]uality and performance issues." Woolwine, however, could not recall the specific issues. Plaintiff claims that it countered Woolwine's testimony with evidence that its quality had increased.

Plaintiff's theory that its sales to Acuity dropped because of Pravin's conduct is mere speculation. Given Woolwine's testimony, another plausible explanation was quality issues. Even if this explanation was not persuasive because Woolwine lacked personal knowledge and given the evidence that plaintiff's quality had increased, plaintiff's theory was still speculative. There was no evidence to permit a reasonable inference that Pravin's conduct caused the decrease in sales. Plaintiff merely relies on the correlation between the interference and the drop in sales. "It is axiomatic in logic and in science that correlation is not causation. This adage

counsels that it is error to infer that A causes B from the mere fact that A and B occur together." *Craig v Oakwood Hosp*, 471 Mich 67, 93; 684 NW2d 296 (2004) (citation omitted). Given the absence of evidence that Pravin's conduct caused any reduction in sales, the trial court properly granted summary disposition on plaintiff's claims against Pravin in Counts V and VI.

We affirm the trial court's order granting summary disposition in favor of defendants on plaintiff's Counts I through VI, reverse the trial court's order granting summary disposition in favor of defendants on their counterclaim for indemnification, and vacate the stipulated judgment and order. No costs, no party having prevailed in full.

/s/ David H. Sawyer
/s/ Mark J. Cavanagh
/s/ Karen M. Fort Hood